## STONE v. SHALLUS.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1906.)

### No. 618.

1. CUSTOMS DUTIES—FRUIT IN PACKAGES—ALLOWANCE FOR DECAY.

The rule that fruit imported in a rotten and wholly worthless condition does not constitute dutiable merchandise applies as well to fruit in packages as to fruit in bulk, and in the assessment of duty on fruit imported in packages allowance should be made for the decayed portions.

2. SAME—DAMAGE ALLOWANCE.

Customs Administrative Act June 10, 1890, c. 407, § 23, 26 Stat. 140 [U. S. Comp. St. 1901, p. 1930], forbidding an allowance for damage in the assessment of duties, unless the loss exceeds 10 per cent. of the invoice, does not apply in the case of decayed fruit which is in a wholly worthless condition when imported; and the wholly decayed fruit imported in packages may be culled out, and duty paid on the merchantable quantity remaining, regardless of its percentage.

3. SAME—CONDITION PRECEDENT TO ASSESSMENT—ACTUAL IMPORTATION.

The general doctrine regarding the assessment of duties is that they can be levied upon such articles only as are made dutiable by Congress and are actually imported into the United States.

Appeal from the Circuit Court of the United States for the District of Maryland.

For decision below, see 137 Fed. 674, affirming a decision of the Board of United States General Appraisers, which had reversed the assessment of duty by William F. Stone, collector of customs at the port of Baltimore on merchandise imported by Frank H. Shallus.

John C. Rose, U. S. Atty.

Before PRITCHARD, Circuit Judge, and WADDILL and KELLER, District Judges.

KELLER, District Judge. The petition filed by the collector of customs for the district of Baltimore is for the review of a decision of the Board of United States General Appraisers, dated September 14, 1903, in the matter of the protest of Frank H. Shallus against the decision of the collector of customs at Baltimore, Md., as to the rate and amount of duties on certain rotten oranges which were separated from the original packages in which they were imported per the steamship Buccaneer, November 20, 1900. The protest was numbered 47,383–B–1,202.

Both the appellant in his brief, and the court in its opinion refer to this case as relating to an importation of something over 1,000 barrels of oranges, of which 215 barrels were opened and assorted, and from which 63 barrels of "slush" were obtained. We presume that several cases were heard at the same time in the Circuit Court, and, if so, this will account for the misstatement of the facts found in the brief of appellant and the opinion of the court; but the fact is that the petition printed in the record in this case relates to a consignment of 700 boxes of oranges, all of which were repacked by permission of the collector, and out of which 87 boxes of "slush" or worthless matter were culled. As a matter of fact, the record shows that evidence was taken at the same time relating to protest No. 46,936–B–1,056, which did relate to a consignment of 1,078 barrels of oranges, shipped per Oxus, March 7, 1900, and to protest No. 47,383–B–1,202, which related to 700 boxes of oranges shipped per Buccaneer from Kingston, and entered for consumption November 20, 1900. As the same principle applies to the assessment of duty upon each of these importations, the only importance in the discrepancy between the petition in the record and the opinion of the court lies in the confusion to which it naturally gives rise.

We will proceed now to state the facts as they appear in the record relative to the importation which was the subject of the controversy referred to in the petition. Upon the arrival of the Buccaneer at the port of Baltimore the importer applied to the collector for permission to open this consignment of 700 boxes of oranges at the dock, in the presence of an inspector, and repack the same. This was permitted under a regulation of the Treasury Department (T. D. 21,831, Dec. 12, 1899), and out of the 700 boxes of oranges enough rotten oranges or "slush" were found to fill 87 boxes. This slush was weighed, and, as its weight was not equal to 10 per cent. of the

weight of the entire consignment of 700 boxes, the collector declined to allow any abatement therefor, and collected duty at 1 cent per pound upon the entire weight of the consignment, including the rotten oranges or "slush," and the importer paid the duty and filed his protest. The contention of the importer was that the contents of the 87 boxes of "slush," being worthless and having lost its identity as oranges, had ceased to be merchandise of any kind before its entry into the United States, and that, under the decision of the Supreme Court of the United States in Lawder v. Stone, 187 U. S. 281, 23 Sup. Ct. 79, 47 L. Ed. 178, all of this "slush" constituted a shortage upon which no duty should have been levied. Upon a hearing before the Board of United States General Appraisers, the protest of the importer was sustained, and the 87 boxes of "slush" treated as shortage. From this decision of the Board of General Appraisers the collector appealed to the Circuit Court, which affirmed the decision of the Board of General Appraisers. The collector has now appealed to this court.

The general doctrine continuously and consistently applied by the courts to the question of assessment of duties upon importations is that they can be levied upon such articles only as are made dutiable by Congress and are actually imported into the United States. In Marriott v. Brune, 9 How. 619, 13 L. Ed. 282, which was the case of a protest by the importers against a collection of duty upon sugar which during the voyage had leaked out of the hogsheads in which it was imported, the Supreme Court announced its view as to the proper principles applicable to this class of cases in the following language:

"The general principle applicable to such a case would seem to be that revenue should be collected only from the quantity or weight which arrives here; that is, what is imported, for nothing is imported till it comes within the limits of a port. See cases cited in Harrison v. Vose, 9 How. 372, 13 L. Ed. 179. * * * As to imports, they therefore can cover nothing which is not actually brought into our limits. That is the whole amount which is entered at the custom house; that is all which goes into the consumption of the country; and that alone is what comes in competition with our domestic manufactures; and we are unable to see any principle of public policy which requires the words of the act of Congress to be extended so as to embrace more."

Speaking of the importation in that case, which, under the law of 1846, was dutiable at an ad valorem rate, the court goes on to say:

"When the duty was specific on this article, *being a certain rate per pound, before the act of 1846, it could, of course, extend to no larger number of pounds than was actually entered.* The change in the law has been merely in the rate and form of the duty, and not in the quantity on which it should be assessed." (Italics ours.)

The court then instances the various ways in which an article sought to be imported may be nonexistent at the time of the arrival of the vessel in the American port, citing among them the case of natural decay, and proceeds:

"If there be a material loss, it can make no difference to the sufferer or the government whether it happened by natural or artificial causes. In either case, the article, to that extent, is not here to be assessed, nor to be of any

value to the owner. To add to such unfortunate losses the burden of a duty on them, imposed afterwards, would be an uncalled-for aggravation, would be adding cruelty to misfortune, and would not be justified by any sound reason or any express provision of law."

In Lawder v. Stone, 187 U. S. 281, 23 Sup. Ct. 79, 47 L. Ed. 178, the Supreme Court held that that portion of a cargo of pineapples which on arrival within the limits of a port of entry of the United States was found to be so decayed as to be utterly worthless is not dutiable, though the loss was less than 10 per cent. of the total invoice, as entirely worthless articles are not within the provisions of Customs Administrative Act June 10, 1890, c. 407, § 23, 26 Stat. 140 [U. S. Comp. St. 1901, p. 1930].

The sole ground of distinction between this last case and the one at bar is that in the case of Lawder v. Stone the importation was of pineapples in bulk in the hold of the vessel, and in the case at bar the importation was of oranges in boxes, and the shortage by rot was not discoverable or discovered until these boxes were opened at the dock under the supervision of a government inspector. We cannot see that the natural and appropriate conditions of importation can affect the broad principle of right laid down by the Supreme Court in the two cases just cited. Pineapples and cocoanuts are susceptible of importation in bulk. Oranges, from their greater liability to crushing, are less so. But it does not seem to us that, so long as the government receives the full duty leviable upon the entire weight of the oranges which actually come into the country as such, the manner of their packing creates any essential difference. It is admitted in the record that the matter culled from the 700 boxes of oranges and placed in the 87 boxes was utterly worthless "slush," and that it had lost its identity as oranges, and was only fit for the garbage heap.

In the case of Lawder v. Stone, 187 U. S. 281, at page 293, 23 Sup. Ct. 79, at page 84, 47 L. Ed. 178, the court says:

"When Congress enacted the customs administrative act of 1890, it must be presumed to have possessed knowledge of the decisions of this court to which we have referred and the consistent application made of the doctrine of those decisions by the officials charged with the execution of the tariff laws, as evidenced by the cited treasury decisions. In the light of this fact, it would require a clear expression by Congress of its intention to adopt a contrary policy, before a court would be justified in holding that such was the purpose of the legislative branch of the government. Section 23 of the customs administrative act contains no such clear expression of an intention to alter the prior practice, but the contrary. The reference in section 23 to an allowance for 'damage' and the provision that the abandoned portion of the cargo should 'be sold by public auction or otherwise disposed of for the account or credit of the United States' manifestly imports that it related to an article which, when the duty attached, was possessed of some value, and therefore negatives the idea that Congress was concerning itself with that which was destitute of all value. When, therefore, it was enacted that in a certain contingency no allowance should be made for 'damage to goods, wares, and merchandise imported into the United States,' it is reasonable to construe this language as not referring to an article, case, or package, which, though in the semblance of merchandise, had become absolutely valueless by reason of natural causes or casualty occurring thereto while the article, case, or package was in transit to the United States."

The force of the decision in the case of Lawder v. Stone is sought to be escaped by counsel for the government by reason of the use by the Supreme Court in that part of its opinion just quoted, of the terms "article, case, or package," and by the contention that in the case of Lawder v. Stone the duty was levied under the act of 1894, upon the number of pineapples imported, whereas by the present act the duty is levied upon the number of pounds of oranges imported. He says that, were oranges dutiable by number, the case might be construed to make each separate orange a unit of transportation, but that the case is different where the duty is levied upon the weight of all the oranges. We are not impressed with the force of this reasoning, and regard it as entirely indifferent whether the duty be leviable upon the fruits by the pound or by the dozen (as in the pineapple case), so long as it is clear that the government has received the duty upon all the pounds or dozens of the fruit actually coming into the country. While it is true that the consignment consisted of "700 boxes of oranges," it was not upon such consignment, eo nomine, that the duty was payable, but upon the number of pounds of oranges imported; and upon the discovery of the fact that these boxes, or any of them, contained worthless slush, the same principle which allowed abatement in the number of pineapples, should and does, we hold, authorize abatement of the weight of such "slush" from the total weight of the importation. It is not the "box" of oranges which is the unit of importation. It is the "pound" of oranges.

There is no error in the judgment of the Circuit Court of the United States for the District of Maryland, and the same is accordingly affirmed.