UNITED STATES v. COURTIN & GOLDEN.

(Circuit Court, S. D. New York. February 21, 1907.)

No. 4,261.

CUSTOMS DUTIES—NONIMPORTATION—ROTTEN FRUIT CONDEMNED BY HEALTH AUTHORITIES.

Before being unladen, but after being free from customs supervision, certain imported fruit was condemned by local health authorities whenever a considerable portion of any crate appeared to be decayed, and the entire contents of such crates were condemned, and required to be dumped in the sea, no portion thereof becoming a subject of commerce within the United States. *Held*, that such condemned fruit should be treated as a nonimportation, and as not dutiable.

On Application for Review of a Decision of the Board of United States General Appraisers.

For decision below, see G. A. 6,356 (T. D. 27,324), affirming the assessment of duty by the collector of customs at the port of New York.

D. Frank Lloyd, Asst. U. S. Atty.

Henry S. J. Flynn, for importers.

HOUGH, District Judge. Certain pineapples in crates having been brought into the United States by the appellees, a considerable portion of the same were destroyed by a representative of the health department of the city of New York as not being "fruit * * * sound, wholesome and safe for human food." Sanitary Code of New York City, § 42. The method of condemning the fruit was to examine each crate, and, if a considerable portion of the contents thereof appeared to be decayed, the whole crate was condemned, and the ship upon which it was found required to convey the same again to sea, and dump it overboard. This condemnation took place while the goods were being unloaded, and after a "tropical permit" for the unloading thereof and delivery to the importers had been granted by the custom house. This appeal raises the point whether any rebate or reduction in duties should be allowed to the importers, inasmuch as the pineapples in question were freed from custom supervision by the granting of the tropical permit above referred to. The evidence leaves it undoubted that no portion of the condemned goods ever passed into the actual control of the importers or became a subject of commerce within the United States.

The action of the health department of this city clearly was a lawful exercise of police power, and in my opinion this case is entirely within the doctrine of Lawder v. Stone, 187 U. S. 281, 23 Sup. Ct. 79, 47 L. Ed. 178. The facts in that case were indeed quite different, but the doctrine as interpreted in Stone v. Shallus (C. C. A., 4th Circuit, T. D. 27,133) 143 Fed. 486, 74 C. C. A. 506, is directly applicable. In the Shallus Case the importation was of oranges in boxes, and "the shortage by rot was not discoverable or discovered until those boxes were opened under the supervision of the government inspector." I think it makes no difference whether the rot was dis-

covered under the supervision of a government inspector or under the lawful supervision of an inspector of the health department, as long as it was discovered before the rotten article had passed into the actual control of the importer. Before these pineapples could be lawfully used by the importer they had to pass not only the federal customs officers, but also the lawful police authorities of the city of New York, each standing at the portal of the country and each authorized to forbid admission. What was dutiable in the Shallus Case, supra, was "pounds of oranges imported," what was dutiable in this case was packages of pineapples; and, if the government received "the full duty leviable upon the entire [number of packages of pineapples] which actually came into the country as such," I think the law is complied with.

The decision of the Board of Appraisers is affirmed.