# LAWDER *v.* STONE, COLLECTOR.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 82. Submitted November 11, 1902.—Decided December 1, 1902.

Section 23 of the Customs Administrative Act of June 10, 1890, permitting importers to abandon imported articles to the United States and be relieved from the payment of duties thereon, provided the portion so abandoned amounts to at least ten per cent of the total value or quantity of the invoice, does not apply to a cargo of fruit, a portion whereof (which is less than ten per cent) decays on the voyage becoming utterly worthless, and necessarily dumped overboard under the sanitary regulations of the port after arrival of the vessel.

It would be unequitable and presumably not within the intention of Congress to assess duty upon articles which on a voyage to this country and before arrival within the limits of a port of entry had become utterly worthless by reason of casualty, decay or other natural causes, and which the importer might rightfully abandon and refuse to receive or enter for consumption.

Articles thus circumstanced are not in truth within the category of goods, wares and merchandise imported into the United States, within the meaning of the tariff laws. (*Marriott v. Brune,* 9 Howard, 619, and cases since decided on the authority thereof, followed.)

Article 1236 of the Customs Regulations of 1899, which is based upon sec. 2984 Rev. Stat. relates to merchandise which is destroyed or deteriorates after actually having been entered and is not applicable where the merchandise, as in this case, was never actually entered because it was destroyed before it could be entered.

When Congress enacted the Customs Administrative Act of 1890, it must be presumed to have possessed knowledge of the decisions of this court and the consistent application made of the doctrine of those decisions by the officials charged with the execution of the tariff laws, and in the light of this fact it would require a clear expression by Congress of its intention to adopt a contrary policy before a court would be justified in holding that such was the purpose of the legislative branch of the government.

IN the months of May, June and July, 1897, the petitioners, copartners, trading as S. M. Lawder & Sons, imported into the port of Baltimore from the British West Indies several cargoes of pineapples, invoiced as a specified number of dozens.

Upon the discharge of the cargo at Baltimore, after the pine-

apples had been taken out of the vessels and their number esti-
mated by the inspectors, there remained in the holds a quantity
of what was described as "slush," consisting of decomposed
vegetable matter, mixed with bilge water and other *débris* of
the cargo, some of it in a semi-liquid condition. This slush
was brought up from the holds in baskets and included by the
inspectors in their appraisement of the cargoes. The pineap-
ples alleged to be contained in the slush were uncountable, and
their number was roughly estimated by the inspectors by count-
ing the pineapple tops and butts contained in a number of bas-
kets of the slush, striking an average of those baskets, and then
calculating the number contained in the whole quantity of slush
according to that average. The material thus removed from
the vessels was commercially valueless, and under the sanitary
regulations of the city of Baltimore was taken down the river
on a scow and dumped overboard. The number of pineapples
so estimated by the inspectors to be contained in the slush was
less than ten per cent of the total invoice, and the collector
treated the loss as a case of damage to the cargo within the
meaning of section 23 of the customs administrative act of
June 10, 1890, and assessed duty on the whole number of pine-
apples estimated by the inspectors to be contained in the car-
goes, including this quantity of slush.

The board of general appraisers sustained a protest of the
importers against the assessment of duties on the worthless and
indistinguishable mass referred to, and this decision was af-
firmed, on appeal of the collector, by the Circuit Court of the
United States for the District of Maryland. On a further ap-
peal by the collector the Circuit Court of Appeals for the Fourth
Circuit reversed the decisions which had been made in favor of
the importers and sustained the action of the collector. 101
Fed. Rep. 710. The case was then brought to this court by
writ of certiorari.

*Mr. Edward S. Hatch* for petitioners.

*Mr. Assistant Attorney General Hoyt* for respondent. *Mr.
James A. Finch* was with him on the brief.

Mr. Justice White, after making the foregoing statement, delivered the opinion of the court.

As mentioned in the preceding statement, the collector of customs for the district of Baltimore treated the loss arising from the worthless condition of the portion of the cargo in question as a case of damage to the entire cargoes, within the meaning of section 23 of the customs administrative act of June 10, 1890. That section reads as follows :

"That no allowance for damage to goods, wares, and merchandise imported into the United States shall hereafter be made in the estimation and liquidation of duties thereon; but the importer thereof may, within ten days after entry, abandon to the United States all or any portion of goods, wares, and merchandise included in any invoice, and be relieved from the payment of the duties on the portion so abandoned : *Provided,* That the portion so abandoned shall amount to ten per centum or over of the total value or quantity of the invoice; and the property so abandoned shall be sold by public auction, or otherwise disposed of for the account and credit of the United States under such regulations as the Secretary of the Treasury may prescribe."

Do pineapples, which, on the voyage to this country, become so decayed as to be utterly worthless, constitute, upon arrival within the limits of a port of entry of the United States, goods, wares and merchandise imported into the United States, within the meaning of this expression as employed in the section above quoted ? is the question for decision.

In *Marriott* v. *Brune,* (1850) 9 How. 619, it was held that, under the eleventh section of the tariff act of July 30, 1846, where a portion of a cargo of sugar and molasses was lost by leakage on the voyage to this country, duty should be exacted only upon the quantity of sugar and molasses which arrived here and not upon the quantity which appeared to have been shipped. In the course of the opinion the court said (p. 632):.

"The general principle applicable to such a case would seem to be, that revenue should be collected only from the quantity or weight which arrives here. That is, what is *imported*—for

nothing is imported till it comes within the limits of a port. See cases cited in *Harrison* v. *Vose*, 9 How. 372. And by express provision in all our revenue laws, duties are imposed only on imports from foreign countries; or the importation from them, or what is imported. 5 Stat. 548, 558. The very act of 1846 under consideration imposes the duty on what is 'imported from foreign countries.' (p. 68.) The Constitution uses like language on this subject. (Article 1, secs. 8, 9.) Indeed, the general definition of customs confirms this view; for, says McCulloch (vol. 1, p. 548), ' Customs are duties charged upon commodities on their being imported into or exported from a country.'

" As to imports, they therefore can cover nothing which is not actually brought into our limits. That is the whole amount which is entered at the custom-house; that is all which goes into the consumption of the country; that, and that alone, is what comes in competition with our domestic manufactures; and we are unable to see any principle of public policy which requires the words of the act of Congress to be extended so as to embrace more.

" When the duty was specific on this article, being a certain rate per pound, before the act of 1846, it could of course extend to no larger number of pounds than was actually entered. The change in the law has been merely in the rate and form of the duty, and not in the quantity on which it should be assessed.

" On looking a little further into the principles of the case, it will be seen that a deduction must be made from the quantity shipped abroad, whenever it does not all reach the United States, or we shall in truth assess here what does not exist here. The collection of revenue on an article not existing, and never coming into the country, would be an anomaly, a mere fiction of law, and is not to be countenanced where not expressed in acts of Congress, nor required to enforce just rights.

" It is also the quantity actually received here by which alone the importer is benefited. It is all he can sell again to customers. It is all he can consume. It is all he can reëxport for drawback. 1 Stat. 680–689; 4 Stat. 29."

After instancing certain cases provided for in a statute where

a fixed percentage was directed to be deducted for leakage and breakage and a reduction in weight for tare and draff, the court further said (p. 633):

· "But beside these instances, in cases of an actual injury to an article arriving here in a damaged state, a reduction from the value is permitted expressly on account of the diminished value. 1 Stat. 41, 166, 665.

"The former cases, referred to for illustration, rest on their peculiar principles, and allowances in them are made by positive provisions in acts of Congress, even though the quantity and weight of the real article meant to be imported should arrive here. Because, knowing well that the whole is not likely to arrive, and being able to fix, by a general average, the ordinary loss in those cases with sufficient exactness, the matter has been legislated on expressly.

"Yet there are other cases of loss, from various causes, which may be very uncertain in amount, for which no fixed and inflexible rate of allowance can be prescribed, and which must, therefore, in each instance, be left to be regulated by the general provisions for assessing duties, and the general principles applicable to them, as before explained. Consequently, where a portion of the shipment in cases like these does not arrive here, and hence does not come under the possession and cognizance of the custom-house officers, it cannot, as heretofore shown, be taxed on any ground of law or of truth and propriety, and does not therefore require for its exemption any positive enactment by Congress.

"Such is the case of a portion being lost by perils of the sea, or by being thrown overboard to save the ship; or by fire, or· piracy, or larceny, or barratry, or a sale and delivery on the voyage, or by natural decay. If there be a material loss, it can make no difference to the sufferer or the government whether it happened by natural or artificial causes. In either case, the article to that extent is not here to be assessed, nor to be of any value to the owner.

"To add to such unfortunate losses, the burden of a duty on them, imposed afterwards, would be an uncalled for aggravation, would be adding cruelty to misfortune, and would not be

justified by any sound reason or any express provision of law. On the contrary, Congress, in several instances, when the articles imported actually arrived here, and were afterwards destroyed by fire before the packages had been open and entered into the consumption of the country, have refunded or remitted the duties. 2 Stat. 201; 5 Stat. 284; 6 Stat. 2.

"But much more should duties not be exacted on what was lost or destroyed on its way hither, and which never came even into the possession or control of the custom-house officers, and much less into the use of the community."

The doctrine of this decision clearly supports the proposition that it would be inequitable and presumably not within the intention of Congress to assess duty upon an article which on a voyage to this country and before arrival within the limits of a port of entry had become utterly worthless by reason of casualty, decay or other natural causes, and which the importer might rightfully abandon and refuse to receive or enter for consumption. In other words, that articles thus circumstanced were not in truth within the category of goods, wares and merchandise imported into the United States, within the meaning of the tariff laws. The ruling in *Marriott* v. *Brune* was approved and applied in *United States* v. *Southmayd*, 9 How. 637, and *Lawrence* v. *Caswell*, and it has been consistently recognized by this court that as a general rule duties are intended to be levied only upon the value of goods which possess some intrinsic or other value at the time when ordinarily the duty would attach on an article.

That the policy we have stated was regarded by Congress as the true doctrine to be applied, is shown by the legislation with respect to the remission of duties upon goods, wares and merchandise in general, to the extent that the same were damaged. Thus, as stated in *United States* v. *Bache*, 59 Fed. Rep. 762, 763, the statutory system, from 1799 to the adoption of the tariff act of October 1, 1890, in regard to rebates of duties on account of damage to imported merchandise in transit, was embodied in section 2927 of the Revised Statutes, being a substantial reproduction of a section of the act of 1799. The section of the Revised Statutes reads as follows:

"Sec. 2927. In respect to articles that have been damaged during the voyage, whether subject to a duty ad valorem, or chargeable with a specific duty either by number, weight, or measure, the appraisers shall ascertain and certify to what rate or percentage the merchandise is damaged, and the rate of percentage of damage, so ascertained and certified, shall be deducted from the original amount, subject to a duty ad valorem, or from the actual or original number, weight, or measure, on which specific duties would have been computed. No allowance, however, for the damage on any merchandise, that has been entered, and on which the duties have been paid or secured to be paid, and for which a permit has been granted to the owner or consignee thereof, and which may on examining the same prove to be damaged, shall be made, unless proof to ascertain such damage shall be lodged in the custom-house of the port where such merchandise has been landed, within ten days after the landing of such merchandise."

. So, also, by section 2921 of the Revised Statutes, it was provided as follows :

"Sec. 2921. If, on the opening of any package, a deficiency of any article shall be found, on examination by the appraisers, the same shall be certified to the collector on the invoice, and an allowance for the same be made in estimating the duties."

By the act of July 14, 1870, 16 Stat. 256, 265, however, an exception was engrafted upon the general provision as to allowances for damage which might have resulted to goods, wares and merchandise on the voyage, by the enactment that no allowance should be made with respect to certain fruits, for loss by decay on a voyage, unless the same should exceed twenty-five per centum of the whole quantity, and the allowance then made should be only for the amount of loss in excess of twenty-five per centum of the whole quantity. As said in *Scattergood* v. *Tutton*, 2 Fed. Rep. 28, the limitation was applied "manifestly to avoid allowance for trifling losses." While, however, certain fruits were made dutiable by the tariff act of March 3, 1883, 22 Stat. 488, 504, and certain other fruits (including pineapples) were placed on the free list, 22 Stat. 519, the discrimination referred to against damage allowances upon importations of fruit

was not continued, and in section 23 of the customs administrative act of 1890 fruits are not discriminated against.

In its decisions upon applications of importers to be exempted from payment of duties because of the practical destruction of an article while in transit to this country, or for an allowance because of damage occasioned to imported goods before arrival here, the Treasury Department has frequently applied the doctrine enunciated by this court in *Marriott* v. *Brune,* viz., that the purpose of Congress in enacting tariff laws was to exact the payment of duty only upon imported articles which were in truth and in fact, entitled to the appellation of goods, wares and merchandise, articles which were not absolutely worthless but may possess some value for use or consumption. Thus, in Treasury Decision No. 424, of date July 15, 1869, duties were ordered to be remitted on four cases of needles which had become worthless by reason of being submerged in salt water on the voyage of importation. It was held that the case did not come within the prohibition of the thirty-third paragraph of the third section of the act of July 14, 1862, which prescribed that no allowance for partial loss or decay should be made in consequence of rust of iron or steel, etc. Again, in Treasury Decision No. 1167, of date July 8, 1872, fruit which had become worthless on the voyage of importation was held not dutiable, and the provision of the act of July 14, 1870, limiting the damage allowance on fruit, was held not to apply, and it was ordered that the case should be treated as if no importation had been made. In the course of the decision, known as Treasury Decision No. 3236, of date May 14, 1877, after ruling that the " quantity " specified in the act of July 14, 1870, limiting allowances for damage to green fruit, referred to the quantity specified in the damage application and landed in the United States, it was observed (italics not in the original) :

" In many instances a *portion* of a cargo of green fruit becomes wholly worthless by decay, and such portion is to be excluded in considering the quantity upon which damage is to be estimated unless it is included in the damage warrant."

In Treasury Decision No. 3272, dated June 21, 1877, passing upon a case where an importer, in his application for damage

allowance upon forty-one barrels of oranges, included as part of the forty-one barrels, twenty and a half barrels of entirely worthless oranges, it was declared that, if the goods had been landed in the United States as any other merchandise and no damage application had been filed, duty would have accrued thereon ; whereas if they had been thrown overboard at sea, no duty would accrue, as there would have been no importation of that quantity. In Treasury Decision No. 4126, of date August 1, 1879, upon application being made for a damage allowance upon an invoice of certain oranges and lemons, the goods were reported damaged " to the extent of one hundred per cent, in other words, entirely worthless." The ruling in Treasury Decision No. 1167 was applied, and it was held that, where fruit was so damaged on the voyage of importation as to be entirely worthless, the clause in the statute limiting the damage allowance to the excess over twenty-five per cent did not apply, and that the case should be treated the same as if no importation had been made. Treasury Decision No. 9719, dated November 19, 1889, reads as follows:

" SIR : The Department is in receipt of your letter of the 13th instant, reporting further on the appeal (537*x*) of Messrs. Riley & Grey from your assessment of duty on certain card clothing, imported by them per ' Bulgarian ' February 16, 1889, and found, upon examination, to have been destroyed by water during the voyage of importation.

" The appraiser reports that the clothing in question was wound in coils, and has been subjected to a complete soaking with salt water, which has permeated the entire coil, oxidizing the wire and completely rotting the cotton backing, so that it is absolutely worthless, and cannot be used for any purpose whatever, even as old junk.

" In view of this report, the Department is of opinion that the card clothing is not an importation of merchandise within the meaning of the law, and you are hereby authorized to readjust the entry and to refund the duty levied thereon."

After the passage of the customs administrative act of June 10, 1890, the board of general appraisers, on June 6, 1891, announced its decision upon a protest against the exaction of

duty on an alleged shortage of 35,700 oranges, part of an invoice of 280,000 oranges, on which entry had been made and the duty paid. The shortage was not ascertained until after the payment of the duties, and such shortage was presumably represented by a quantity of "rots and slush," which had been removed from the vessel in obedience to the health ordinance of the city of Baltimore. The collector and naval officer reported that they were satisfied by proof that the 35,700 oranges became rotten and worthless on the voyage and never went into consumption. It was held that the collector was authorized to make allowance for the shortage in the liquidation of the duty on the entries. In the course of the decision it was said:

"As they could not be abandoned in the manner provided for the abandonment of merchandise in section 23 of the act aforesaid, the collector exacted duty upon the entire entry. Article 609 of the General Regulations permits an allowance for lost or missing articles when it is shown by proof satisfactory to the collector and naval officer that they have been lost or destroyed by accident during the voyage. Loss of fruit by decay may reasonably be held to be an accident, it being a loss by a contingency, chance or casualty. Section 23 aforesaid would not apply where there had been a total loss of dutiable articles, for the word 'damaged' is there used in the sense of impairment or injury, and the section contemplates that something remains to be abandoned."

Treasury Decision No. 16,138, dated June 8, 1895, related to a claim of allowance for shortage on an importation of cocoanuts, the shortage being occasioned by the rotting and breaking of certain cocoanuts on the voyage of importation. In consequence of the ruling in *United States* v. *Bache*, 59 Fed. Rep. 762, wherein it was held that glass broken on the voyage of importation, *but which possessed some value for remanufacture*, should be allowed for as a damage within the meaning of section 23 of the customs administrative act of 1890, the Treasury Department refused to accept the doctrine laid down by the board of general appraisers, viz., that merchandise the value of which is totally destroyed ceases to be damage and may

properly be treated as a shortage. This last was but another form of stating the proposition that that which has been rendered worthless on the voyage to this country, by casualty, decay or other natural causes, is not embraced within the category of goods, wares and merchandise, even though existent on the vessel on its arrival within the limits of a port of entry. On the controversy, however, being brought into the courts, the decision of the board of general appraisers was upheld. *Shaw, Collector,* v. *Dix,* 72 Fed. Rep. 166. In distinguishing the case before it from the *Bache* case the court said (p. 167):

"In *United States* v. *Bache,* 8 C. C. A. 258; 59 Fed. Rep. 762, the facts presented raised a very different issue. The importation was glass in cases or packages, and a considerable breakage of glass in the cases occurred during the voyage. The cases all arrived. The contents were not destroyed, but were damaged. It was clearly a case within the language of section 23, and no question would have arisen but for the fact that ' broken glass fit only to be remanufactured' was by law exempt from duty, and admitted free. The importer claimed that as, during the voyage, a portion of each case became broken glass, its character as merchandise was, changed, and it became an article specifically exempted from duty, and entitled to come in free, and that it made no difference that the dutiable and non-dutiable goods happened to come into this country in the same box. He claimed that he was chargeable with duty on the merchandise as it came into this country and not as it was when it was put aboard the ship in the foreign port. It was held by the Circuit Court of Appeals for the Second Circuit that, Congress having enacted a general statutory system for the ascertainment of the damage to imported goods, and for allowance in respect to such damage, it could not be supposed that damages to importations of glass were to be exempted out of that general system simply because importations of broken glass had been put on the free list, and held that there was nothing indicating an intention by Congress to take the one article of glass out of the general system. The general system provides that, if the damage amounts to ten per cent of the total invoice, the importer may abandon any portion of the

invoice and be relieved from the duties on the portion so abandoned.

"I think it is clear that the board of general appraisers was right in holding, in deciding the present case, that this section contemplated a case where there remains something to be abandoned, in the sense of being impaired in value, but that it is not applicable to a case where specific items of the invoice have been so entirely destroyed as that, in reckoning up to the items of the invoice, they cannot be counted, and where the destroyed items are valueless, and there remains nothing which can be the subject of abandonment. Section 23 of the act of 1890 is not inconsistent with the general provisions of section 2921 of the Revised Statutes, nor with sections 906 and 922 of the General Regulations, providing that, if the quantity which arrives is less than the invoice, there may be an allowance for the deficiency. In the present case it was not possible for the appraisers to say what number of cocoanuts was contained in the mass of *débris* remaining after the discharge of the cargo. It was estimated that this mass contained the difference between the number discharged and the number stated in the invoice. But the number specified in the invoice is not the result of an accurate count, the nuts being often brought on board in small boats through the surf, so that it is not possible to say with any accuracy what number the mass of *débris* did represent. It is quite manifest that there is no ground for the contention that section 23 is applicable to this case. The decision of the board of general appraisers is sustained."

Article 1236 of the customs regulations of 1899 was referred to in the argument at bar as supporting the contention on behalf of the government that Congress intended by section 23 of the customs administrative act of June 10, 1890, to classify everything reaching this country, invoiced from a foreign port, as imported goods, wares and merchandise, however worthless specific articles might have become during the voyage. But the regulation lends no support to this contention. It was based upon section 2984 of the Revised Statutes, which conferred authority upon the Secretary of the Treasury to remit impost

duties paid or accruing upon imported merchandise which had been injured by accidental fire or other casualty after arriving in this country and while in the actual or constructive possession of the officers of the government. In effect, by the terms of the regulation, section 2984 of the Revised Statutes is construed as not conferring authority upon the Secretary of the Treasury to make allowances for any deterioration or damage to such merchandise from natural or avoidable causes, arising after the arrival of merchandise and the attaching of duties thereon, a ruling which throws no light upon the proper decision of the question we are considering.

When Congress enacted the customs administrative act of 1890 it must be presumed to have possessed knowledge of the decisions of this court to which we have referred and the consistent application made of the doctrine of those decisions by the officials charged with the execution of the tariff laws, as evidenced by the cited Treasury decisions. In the light of this fact, it would require a clear expression by Congress of its intention to adopt a contrary policy, before a court would be justified in holding that such was the purpose of the legislative branch of the government. Section 23 of the customs administrative act contains no such clear expression of an intention to alter the prior practice, but the contrary. The reference in section 23 to an allowance for "damage," and the provision that the abandoned portion of cargo should "be sold by public auction or otherwise disposed of for the account or credit of the United States," manifestly imports that it related to an article which when the duty attached was possessed of some value, and therefore negatives the idea that Congress was concerning itself with that which was destitute of all value. When, therefore, it was enacted that in a certain contingency no allowance should be made for "damage to goods, wares and merchandise imported into the United States," it is reasonable to construe this language as not referring to an article, case or package, which though in the semblance of merchandise, had become absolutely valueless by reason of natural causes or casualty occurring thereto while the article, case or package was in transit to the United States. The section then not embracing

articles which upon arrival in this country were outside of the category of imported goods, wares and merchandise, such articles must be held, in accordance with the prior rulings on the subject, not to be susceptible to assessment for duty. If, as is conceded by the government, the rotten and worthless pineapples in question had been thrown overboard before the vessel reached this country, and no duty could have been assessed upon the fruit thus disposed of, the circumstance that the mass of rotten fruit in question could not perhaps have been gotten at upon the voyage by reason of the extent and character of the cargo of which it formed a part, so as to permit of the worthless stuff being dumped overboard before the arrival of the vessel in the United States, ought not, in justice, to debar the importer from successfully contending that the worthless material when it reached this country was not goods, wares or merchandise within the intent of the tariff acts.

*Judgment of the Circuit Court of Appeals is reversed; judgment of the Circuit Court affirmed; and the cause remanded to that court with a direction to carry its judgment into effect.*