Boston Brokerage Co. *v.* United States (No. 3823)[1]

[1] T. D. 47454.

United States Court of Customs and Patent Appeals, December 24, 1934

*Walden & Webster* (*J. L. Klingaman* and *Edward F. Jordan* of counsel) for appellant.

*Joseph R. Jackson*, Assistant Attorney General (*Richard E. FitzGibbon* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument December 12, 1934, by Mr. Jordan and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, overruling a protest of appellant insofar as said protest claimed that 384 cases of figs, condemned by the United States Department of Agriculture as unfit for human consumption, were not liable to the duties which had been assessed thereon at the rate of 5 cents per pound under the provisions of paragraph 740 of the Tariff Act of 1930. The 384 cases of figs in question were part of a shipment originally entered for warehouse by appellant at the port of New York.

There is no testimony in the record, but the case was submitted to the trial court, and is before us, upon the papers on file in the case and the following stipulation entered into by the parties:

It is hereby stipulated and agreed between counsel as follows:

1. That 500 cases of the figs covered by warehouse entry #57810, S/S *Edison*, October 17, 1930, in the name of Seideman & Seideman, were shipped in bond under warehouse withdrawal for transportation entry 3831 to the Collector of Customs at Boston, Mass., for J. N. Segal.

2. That on arrival at Boston these figs were rewarehoused and subsequently withdrawn by J. N. Segal & Co. for the Boston Brokerage Co. and the duties thereon paid to the Collector of Customs at Boston.

3. That the United States Department of Agriculture, Port of New York, under Article 540 of the Customs Regulations advised the Collector of Customs at New York to detain the merchandise on the ground that it was not fit for human consumption, and that this notice did not reach the Collector of Customs at Boston until after the figs had been withdrawn for consumption; that on receipt of this notice at Boston the United States Marshal seized and destroyed 116 cases; that the remaining 384 cases had already gone into consumption.

4. That the United States made claim on Seideman & Seideman for failure to redeliver under their bond the figs the subject of this protest and that the matter was determined in favor of the United States.

5. That the protest may be submitted upon this stipulation and all the papers in the case.

Appellant here relies for reversal of the judgment appealed from upon the cases of *Kreutz & Co.* v. *United States*, 20 C. C. P. A. (Customs) 109, T. D. 45752, and *Lawder* v. *Stone*, 187 U. S. 281.

The case of *Kreutz & Co.* v. *United States, supra,* involved the dutiability of certain ergot found unfit for use by the Department of Agriculture. The ergot never entered the commerce of the United States; it was exported, but not under customs supervision. In our opinion, after holding that the importation of said ergot was prohibited, we said:

We are therefore of the opinion that, inasmuch as it appears that the condemned merchandise here in question never actually entered into the commerce of the United States, but was actually exported, though not under customs supervision, it was not subject to duty because its importation was prohibited and duties could not be lawfully assessed thereon. Whether, if the merchandise in question had actually entered into commerce and been sold in the United States, appellant would have been entitled to have the duties refunded we need not here determine.

\*     \*     \*     \*     \*     \*     \*

We hold that, the importation of the merchandise here in question being prohibited by law, and the merchandise having actually been exported to a foreign country, such merchandise was not assessable with duty under the Tariff Act of 1922, and the protest of appellant should be sustained. \* \* \*

It will be observed that we expressly reserved the question of whether, if the ergot had entered the commerce of the United States, it would have been dutiable. We are of the opinion that said case is not controlling of the case at bar, for the reason that it is admitted that the figs here in question were neither destroyed nor exported, but actually went into consumption in the commerce of the United States.

Appellant cannot, with any consistency, claim that the figs in question were not importable. It would be most inequitable to permit an importer to evade the payment of duties upon goods which, by his own voluntary act, had entered into the commerce of the United States, setting up as ground therefor that they never should have so entered into such commerce, but should have been destroyed or exported as the law provides in such case.

The case of *Lawder* v. *Stone, supra,* involved the dutiability of certain pineapples. After removing the pineapples from the ships there remained in the holds a quantity of what was known as "slush," consisting of decomposed vegetable matter, mixed with bilge water and other debris of the cargo, some of it in a semiliquid condition. This slush was brought up from the holds in baskets and included in the appraisements of the cargoes. This material was valueless and, under the sanitary regulations of the city of Baltimore, the port of entry, was taken on a scow and dumped overboard.

The court held that under the facts stated there was no importation of the decomposed pineapples, and that therefore no duty should be assessed against them. This holding is consistent with our holding in the *Kreutz* case, *supra,* and, like the *Kreutz* case, said case of *Lawder*

v. *Stone, supra*, is not controlling in the case at bar for the reason that the pineapples there involved never entered the commerce of the country, but were destroyed. The court in its opinion said:

\* \* \* it would be inequitable and presumably not within the intention of Congress to assess duty upon an article which on a voyage to this country and before arrival within the limits of a port of entry had become utterly worthless by reason of casualty, decay or other natural causes, and which the importer might rightfully abandon and refuse to receive or enter for consumption. \* \* \*.

The converse of this statement is equally true—that it would be inequitable and presumably not within the intention of Congress to refrain from assessing duty upon goods which should have been destroyed or exported, but which in fact had entered into the commerce of the United States.

Clearly, appellant never should have permitted the figs in question to have gone into consumption. Having done so, it should not be permitted to claim that the figs were not importable and that the duties assessed thereon should be refunded to it.

We find no error in the decision of the trial court and its judgment is *affirmed*.