B. M. REEVES CO., INC. *v.* UNITED STATES[1]

United States Customs Court, Third Division

(Decided June 30, 1938)

*Pickrell & McDonald* (*Daniel P. McDonald* of counsel) for the plaintiff.
*Joseph R. Jackson,* Assistant Attorney General (*Richard E. FitzGibbon* and *Daniel G. McGrath,* special attorneys, and *James F. Donnelly,* junior attorney), for the defendant.

[1] C. D. 3.

Before CLINE, EVANS, and KEEFE, Judges; EVANS, J., not participating

KEEFE, Judge: The collector here assessed duty at the appropriate specific rates per gallon upon 520 casks and barrels of olives in brine, under paragraph 744, Tariff Act of 1930. The collector's return was based upon the net gallons reported by the United States gauger. The plaintiff in this action claims that duty should have been assessed only upon such olives as were fit for human consumption and of commercial value and that allowance should have been made for the olives found to have no value.

At the trial the plaintiff offered an amendment to the protest in words and figures as follows:

\* \* \* that the liquidation in this case is illegal and void for the reason that the appraisal thereof made on August 15, 1933, was illegal and void on account of the fact that the collector designated all packages for wharf examination but that only a negligible sample of the merchandise was taken by a sampler and none of the casks and barrels covered by the entry in question ever were examined either by the examiner or the appraiser.

We further claim that the only legal examination made of the merchandise was made by Damage Examiner Trost on August 21, 1934, as a result of there having been filed Damage Appraisement Entry No. 9974 on August 16, 1933.

The Government opposed the motion to amend upon the ground that, as the original protest did not include a claim of illegal appraisement, the cause of action thereon is barred by the statute of limitations.

The protest herein was filed because of the refusal of the collector to make allowance in duties upon damaged merchandise. Had he considered the damage appraisal, made subsequent to the appraisal complained about, the allowance in duties sought in the original protest might have been granted. We are of the opinion that the amendment herein is pertinent to the cause of action for the recovery of duties claimed to have been illegally exacted. Therefore the motion to amend is granted.

The facts developed by the evidence herein are as follows: The importing vessel upon her voyage, during heavy weather pitched and rolled, causing the casks and barrels of olives to spring open, thus allowing the brine from 34 casks and one barrel to leak out, in varying quantities and amounts. The loss of the brine caused a percentage of the olives to become unfit for human consumption and worthless.

The goods were imported on August 7, 1933, and a regular warehouse entry was filed on August 10. The invoice and entry papers were forwarded to the appraiser and the merchandise was appraised upon August 15. The appraisal was made from eleven samples in four-ounce bottles taken from eleven casks or barrels of the shipment. Only two samples were drawn from the damaged casks. No notation whatever of damage was made by the appraiser in his return. In the meantime the question of damage to the olives was taken up with the

steamship company. Cargo surveyors were engaged to determine the amount of damage and on August 15 their report was made to the collector with a request for an appraisement entry covering the damaged portion of the shipment. Thereafter, to wit, on August 16, the appraisement entry was filed and accepted by the collector. The damaged containers of the merchandise were examined on August 21 by the United States damage examiner, who made and entered in his dock book a report of the percentage of damage to the contents of each cask or barrel as found by him. The damage examiner having discovered that the merchandise had been before the appraiser for appraisement, made no official report of damage to the collector, merely stating: "Coll: Appraisement completed prior to filing of appraisement entry." The collector thereupon refused to act upon the application for allowance under section 498 and directed that duty be collected upon the net gallons reported by the gauger. As the gauger's report showed that 20 casks and one barrel were dry, allowance was made for the loss of brine only.

The importer filed an appeal for a reappraisement. At the hearing the importer produced several witnesses who testified concerning the procedure taken by the various officials of the Government, the importer, and the steamship authorities. The Government moved to dismiss the appeal upon the ground that the goods being subject to a specific duty the importer had mistaken his remedy. The court took the motion under advisement and upon consideration dismissed the appeal for lack of jurisdiction. See Reap. Dec. 3423. In rendering the decision the court observed that:

Since the question here involved is one of shortage in quantity, and not of valuation, the proper remedy is by protest filed under section 514 of the act of 1930. Under the rule stated in the case of *Lawder* v. *Stone*, 187 U. S. 281, 47 L. ed. 178, merchandise which has no commercial value when imported is not subject to duty. See also *Bush* v. *United States*, 12 Ct. Cust. Appls. 22, T. D. 39894, and *United States* v. *Shallus*, 2 Ct. Cust. Appls. 332, T. D. 32074, wherein it was held that a determination of the amount of destruction prior to importation is a question of evidence, and that in such cases importers are charged with the burden of proving the actual amount destroyed prior to importation.

Upon the trial hereof there was admitted in evidence the following: The record before the reappraisement court; a deposition of the stevedore who supervised the packing of the cargo in Spain and who made a personal examination of the casks and barrels of olives in question; a memorandum made by the cargo surveyor, engaged by the steamship company, showing the amount of damage; and the dock book containing the notations of the damage to the barrel and 34 casks as determined by the United States damage examiner. The foregoing documentary evidence was supplemented by the testimony of the cargo surveyor making the examination for the steamship company, and further testimony by the United States examiner and by the

assistant to the damage examiner concerning the examination of the merchandise.

From the evidence before us it is clear that the 520 casks and barrels of olives were in good condition when placed in the hold of the importing vessel in Spain; that the olives in one barrel and 34 casks were damaged upon arrival in this country because of injury to the packages in transit; that the damage to the packages containing the olives was occasioned by stress of weather upon the voyage of importation; that the steamship company recognized that the damage occurred while in transit and made settlement for the same upon the determination of cargo surveyors engaged to estimate the same; that the percentage of damage determined by said cargo surveyors corresponded exactly with the estimate of damage, as shown in schedule A hereto attached, and as determined by the United States damage examiner; that the olives were repacked at the plaintiff's warehouse and the good portion was separated from that destroyed; that the olives found to be worthless were packed in barrels with sand to preclude any possible use and thrown upon garbage trucks; that the amount of olives discarded greatly exceeded the amount estimated to have been damaged upon the voyage, this variance being accounted for by further deterioration during the time consumed in the separation of same.

It was further disclosed that damage allowance is made under the provisions of section 498 (a) (2), Tariff Act of 1930; that there was no regulation made by the Secretary of the Treasury governing the procedure in regard to such allowance, but in order that the collector have evidence before him that the damage occurred upon the voyage of importation, it had been the practice at the customhouse at the port of New York for a continued period to refuse to accept damage appraisal entries unless accompanied by letters from the steamship company and the underwriters; that such letters could not be obtained until August 15 and consequently the damage appraisal entry was not filed until August 16, being the day following the regular appraisal of the merchandise; that because of the appraisal becoming complete prior to the filing of the appraisement entry, the damage appraiser made no official return of damage to the collector; that in the appraisal made by the examiner of such merchandise, upon samples furnished by the gauger, no notation was made of any damaged olives, nor was it observed that the samples taken from the damaged casks were not in good condition.

The plaintiff contends that the olives found to be damaged by the examiner and the cargo surveyor had no commercial value when landed and therefore are not subject to duty, according to the principle announced by the Supreme Court in the case of *Lawder* v. *Stone*, 187 U. S. 281.

The Government opposes such contention, first, because no official damage appraisal was made by a Government officer, and therefore there is nothing before this court that may be considered in arriving at the amount of damage; second, that if the damage report is considered, it is of no legal effect under the ruling of this court in the case of *Schmoll* v. *United States*, T. D. 46173; and third, that the relief from duty in a case of this kind is governed by the provisions of section 506 (1) and section 557, and the importer herein has made no attempt to comply with the provisions of said sections nor with the regulations promulgated pursuant thereto.

The statutes relating to the return of duties upon merchandise that is destroyed provide as follows:

SEC. 557. ENTRY FOR WAREHOUSE—WAREHOUSE PERIOD—DRAW-BACK.

    \*        \*        \*        \*        \*        \*        \*

Merchandise entered under bond, under any provision of law, may, upon payment of all charges other than duty on the merchandise, be destroyed, at the request and at the expense of the consignee, within the bonded period under customs supervision, in lieu of exportation, and upon such destruction the entry of such merchandise shall be liquidated without payment of duty and any duties collected shall be refunded.

SEC. 506. ALLOWANCE FOR ABANDONMENT AND DAMAGE.

Allowance shall be made in the estimation and liquidation of duties under regulations prescribed by the Secretary of the Treasury in the following cases:

(1) ABANDONMENT WITHIN THIRTY DAYS.—Where the importer abandons to the United States, within thirty days after entry in the case of merchandise not sent to the appraiser's stores for examination, or within thirty days after the release of the examination packages or quantities of merchandise in the case of merchandise sent to the appraiser's stores for examination, any imported merchandise representing 5 per centum or more of the total value of all the merchandise of the same class or kind entered in the invoice in which the item appears, and delivers within the applicable thirty-day period, the portion so abandoned to such place as the collector directs unless the collector is satisfied that the merchandise is so far destroyed as to be nondeliverable;

(2) PERISHABLE MERCHANDISE, CONDEMNED.—Where fruit or other perishable merchandise has been condemned at the port of entry, within ten days after landing, by the health officers or other legally constituted authorities, and the consignee, within five days after such condemnation, files with the collector written notice thereof, an invoiced description and the location thereof, and the name of the vessel or vehicle in which imported.

SEC. 498. ENTRY UNDER REGULATIONS.

(a) AUTHORIZED FOR CERTAIN MERCHANDISE.—The Secretary of the Treasury is authorized to prescribe rules and regulations for the declaration and entry of—

    \*        \*        \*        \*        \*        \*        \*

(2) Merchandise damaged on the voyage of importation, by fire or through marine casualty or any other cause, without fault on the part of the shipper;

    \*        \*        \*        \*        \*        \*        \*

Under authority of section 498, the Secretary of the Treasury authorized the entry of damaged merchandise by appraisement and

defined the procedure therefor in article 338 of the Customs Regulations of 1931, which reads in part as follows:

Art. 338. Procedure.—(a) [Citing section 498].

(b) The foregoing classes of articles, except as provided in paragraph (d) of this article, regardless of value, may be entered by appraisement on customs Form 7500, unless the articles accompany the owner, in which case they should be included in his baggage declaration.

\* \* \* \* \* \* \*

(c) The entry shall be forwarded to the appraiser who shall report the result of his appraisement on the entry and duties shall be assessed in accordance therewith, but the importer may substitute an entry for warehouse at any time within one year from the date of importation.

\* \* \* \* \* \* \*

In T. D. 35701, the Secretary of the Treasury, following the decisions of the courts to the effect that merchandise, not perishable, which at the time of importation is entirely without commercial value by reason of damage, constitutes a nonimportation within the principle enunciated in the case of *Lawder* v. *Stone*, 187 U. S. 281, directed the collectors of customs as follows:

Therefore, when merchandise, not perishable, is found by the appraising officer to be entirely without commercial value by reason of damage and is so reported to the collector, an allowance in duties on such merchandise should be made in the liquidation of the entry.

You will be governed accordingly.

The above-quoted Treasury decision forms the basis of article 818 of the Customs Regulations of 1931, reading as follows:

Art. 818. Articles damaged and worthless at the time of examination.—When merchandise, which shall have been segregated from the balance of the shipment under customs supervision at the expense of the importer, is found by the appraising officer to be entirely without commercial value by reason of damage, and is so reported to the collector in the appraisement return, an allowance in duties on such merchandise on the ground of nonimportation should be made in the liquidation of the entry.

As we do not deem sections 557 and 506 applicable to the merchandise herein, as hereinafter shown, we will not cite the regulations promulgated pursuant thereto.

Section 506 is not applicable to the merchandise herein because it was not abandoned to the United States within thirty days after entry, nor was it condemned at the port of entry by any legally constituted authorities, such as the Board of Health. Such remedy not having been sought, the failure to invoke the same is not a bar to an action to recover duties upon merchandise not imported, as that term is construed. Section 557 provides that merchandise which has been imported and entered under bond may be destroyed under customs supervision within the bonded period, and when so destroyed the duties thereon may be remitted in the same manner as though the

goods had been exported. In the controversy before us duties were taken upon goods which are claimed to have been in such condition at the time of importation that they were of no commercial value and not merchantable, and, under the decisions of the courts, amounted to a nonimportation. Goods which have a status of a nonimportation or shortage clearly are not of the class which are subject to destruction under customs supervision.

The case of *Schmoll* v. *United States*, T. D. 46173, relied upon by the Government, involved a shipment of hides. Upon the voyage of importation 827 out of a shipment of 2,000 hides were damaged by sea water to the extent of 25 per centum of their value. Therefore at the time of importation the damaged hides constituted merchandise having some value, and are therefore distinguished from the valueless and unmerchantable olives herein. The merchandise there likewise was entered for appraisement and failed to come before the damage appraiser for action until the appraisement of the shipment was completed. The collector refused an allowance in duties commensurate with the reduced value of the hides, as the value fixed by the appraiser had previously been completed. It was held by the court that the collector properly refused to recognize the appraisement made under the appraisement entry, inasmuch as it was completed subsequent to the regular appraisement. It does not appear from the decision that the court was apprised of the practice of the collector's office to require letters showing the extent of the casualty recognized by the steamship company before accepting appraisement entries, or that the delay occasioned by the negotiations of settlement ofttimes precludes an importer from obtaining an appraisement thereon before the appraiser has acted upon the entry of the entire importation. Inasmuch as the hides through damage were merely impaired in value the holding of the court has no application to the situation now before us.

In the case of *Jaburg Bros.* v. *United States*, T. D. 49360, an appraisement entry was filed covering certain damaged almonds. The merchandise covered by the regular entry was passed upon by the appraiser, so far as the papers disclose, before the damaged portion covered by the appraisement entry was acted upon. The almonds were reported damaged to the extent of 70 per centum and a portion thereof was also condemned and seized by the Board of Health. The collector made allowance for the condemned portion only. It was claimed in the protest that allowance should have been made upon the basis of the appraisement entry. That case is distinguished from the controversy now before us for the following reasons: First, it was not claimed or proven that the damage to the almonds was the result of marine casualty; second, it was not proven that the appraiser acted upon the regularly entered goods and those covered by the appraisement entry at the same time as contended by the

plaintiffs; and third, it does not appear that the plaintiffs pleaded a nonimportation, nor was it shown that the damaged portion was completely destroyed before landing.

Merchandise damaged on the voyage of importation through marine casualty may be entered by appraisement on customs Form 7500 under the provisions of section 498 (a) (2), *supra*, and article 338 of the Customs Regulations. The practice of the collector's office in requiring letters from the steamship company and marine underwriters to show the extent of damage, as a prerequisite to filing an appraisement entry, is without authority of law. As it is the manifest intention of Congress to require the collection of duties only upon imported merchandise that is commercially merchantable, the action of the collector which tends to defeat the same will not be sanctioned by the courts. In such instances evidence may be submitted before this court to prove the actual amount of goods destroyed through casualty prior to importation, and upon proper proof of nonimportation the duties illegally collected will be ordered refunded.

The courts have held that it is not the intention of Congress to assess import duties upon merchandise so damaged upon arrival that it no longer may be regarded as merchandise having a commercial value. In the case of *United States* v. *Pastene*, 3 Ct. Cust. Appls. 164, T. D. 32458, the court stated in respect to such articles, as follows:

If there be any power in Congress to levy duties on goods which have been destroyed before their arrival within the tariff jurisdiction of the United States, the intention to exercise that power should be clearly and unmistakably expressed. In the absence of any such expression we are not disposed to infer that Congress intended to add to the misfortunes of the importer by augmenting his losses and compelling him to pay duty on that which prior to importation had become commercially valueless.

The court, in that case, also distinguished between articles which had been merely damaged and those that were destroyed in the following language:

An article is damaged when its value, its usefulness, or its efficiency is only impaired. It is destroyed when its value, usefulness, and that which makes it what it is are completely lost.

In the case of *Marriott* v. *Brune*, 9 How. 619, involving the duty taken upon sugar in hogsheads which, during the voyage, had leaked out, the Supreme Court said:

If there be a material loss, it can make no difference to the sufferer or the Government whether it happened by natural or artificial causes. In either case, the article, to that extent, is not here to be assessed, nor to be of any value to the owner. To add to such unfortunate losses, the burden of a duty on them, imposed afterwards, would be an uncalled-for aggravation, would be adding cruelty to misfortune, and would not be justified by any sound reason or any express provision of law.

In *Lawder* v. *Stone*, 187 U. S. 281, the Supreme Court held that when merchandise at the time of importation has no commercial value, it is not subject to duty. See also *Courtin* v. *United States*, T. D. 26998, and *Villari* v. *United States*, T. D. 27396, affirmed in T. D. 28654, and also *United States* v. *Shallus*, 2 Ct. Cust. Appls. 332, T. D. 32074, wherein it was held that a part of a cargo so far destroyed as to become of no commercial value at the time of importation is not, as to the destroyed portion, deemed an importation of merchandise within the tariff laws.

As the evidence before us clearly proves that the olives preserved in brine contained in two casks and one barrel were completely destroyed and those in the remaining 32 casks were partly destroyed by reason of casualty upon the voyage of importation, we hold that the percentage so lost, appearing upon schedule A hereto attached and made a part hereof, amounts to a shortage or nonimportation. In view of our conclusion herein it becomes unnecessary to pass upon the question of the legality of appraisement argued by plaintiff because of failure to examine sufficient samples.

For the reasons stated judgment will therefore be entered in favor of the plaintiff to the extent specified, and the collector is directed to reliquidate the entry and to make refund accordingly.