(C. D. 1340)

STRACHAN SHIPPING COMPANY *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 25, 1951)

*Philip Stein* (*Marjorie M. Shostak* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Harold L. Grossman,* special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

EKWALL, Judge: This case involves the question of the quantity of empty used grain bags upon which customs duty is assessable

under the Tariff Act of 1930. No question as to the rate of duty is involved, plaintiff's claim being limited to the amount of bags which is subject to duty. The facts as they appear from the record are as follows. The American vessel *Francis E. Warren* arrived at the port of Galveston, Tex., on July 19, 1947, having on board a quantity of empty bags which had been used in transporting a cargo of grain. The vessel was being made ready for delivery to the United States Army under a time charter agreement. The Army had declined to accept said bags, and the plaintiff herein, Strachan Shipping Company, was accordingly authorized by the east coast agents for the vessel to remove the bags from the ship. Inasmuch as there were no invoices or other documents available for the purpose of making entry of the bags, an appraisement entry was made under authority of section 498 (a) (10) of the Tariff Act of 1930 (19 U. S. C. § 1498 (a) (10)), and Customs Regulations of 1943, section 8.50. In this appraisement entry, the description and quantity of the merchandise was stated to be "Approx. 79,000 empty grain bags in used and/or second handed condition of U. S. A. manufacture and origin." A subsequent examination of a portion of the bags by customs officials, upon discharge from the vessel, disclosed that not all of the bags were of American origin. No segregation having been made, all of the merchandise was assessed with duty under the provisions of paragraph 1018 of the Tariff Act of 1930 at the rate of 1 cent per pound upon a total weight of 49,375 pounds, plus 10 per centum ad valorem upon a value of $3,950. This amount was based upon the approximate quantity, i. e., 79,000 bags. Plaintiff waives any claim for free entry on the returned American bags, the sole claim being that duty was assessed upon a quantity not imported into the United States nor landed from the importing vessel, said alleged quantity constituting a nonimportation.

At the outset it is noted that the collector, so far as the record shows, did not pass upon the protest claims, for the reason, as stated in his letter of transmittal, that he was not satisfied as to the authority of the person who signed the protest so to do. He, therefore, transmitted the protest to this court in order that its legal status might be determined. At the trial one Darrell J. Sekin, whose signature is affixed to the protest as customs clerk of the shipping company, produced proof of his authority to file the same. Government counsel in his brief raises no question of the sufficiency of said protest.

On the merits plaintiff produced six witnesses including the United States appraiser of merchandise at the port of entry.

The first witness, Mr. Darrell J. Sekin, testified that at the time these bags were imported he was employed by the plaintiff as a traffic clerk and customs clerk; that the vessel on which the instant bags

were laden arrived at the port of Galveston on July 19, 1947. At the time the vessel arrived, she was due to go under time charter to the United States Army, and at that time she had on board grain bags which he was advised by the master of the vessel amounted to approximately 79,000 in number. The plaintiff company was requested by the east coast agents of the vessel to remove said bags inasmuch as the Army refused to take them under its time charter agreement. He, therefore, proceeded to make an appraisement entry for the goods on the basis of the master's oath that there were 79,000 bags on board. His company made no investigation as to the number of bags but accepted the master's figures on the basis of his oath, which oath is part of the official papers. Duty was paid upon the basis of the 79,000 bags but subsequently his company had the bags weighed by the public weigher because they were to be disposed of locally to firms who buy bags and resell them. By reason of the weights returned by the public weigher, it was discovered that there were only 13,860 pounds, and proceeding upon the assumption that each bag weighed approximately 1 pound, it was assumed that there were only 13,860 bags landed from the vessel. The witness stated that he had previously made entry of bags, and admitted that he should have known at the time of making the appraisement entry that the vessel would not have that many bags on board. However, he was under the impression that perhaps the master for some reason had an overload of bags—usually a vessel does not carry anywhere near that number.

It was conceded by both litigants that the weight of the bags is 10 ounces, or 0.625 pound, rather than 1 pound.

The certificates of the public weigher, to which the witness referred, were admitted in evidence as collective exhibit 1, plaintiff conceding that they "reveal that merely a gross weight of a truck, together with the merchandise thereon, was taken and that then the weight, the tare, rather, of the truck was subtracted, giving the net total."

The witness was asked if in the course of his duties he had ascertained the number and weight of the bags that were unladen from the vessel, to which he replied as follows:

The only way that I ascertained was through the master's oath and through the public weight certificate, which were subsequently received. It was the only way that I had of knowing what bags were taken off or the only way that I endeavored to ascertain the number taken off. I didn't actually see the bags.

Mr. Robert R. Kegresse testified that at the time this merchandise was entered he was working as an extra clerk, but was not regularly employed by the plaintiff company. He stated that on the date of entry his duty was "to see that empty grain bags were loaded aboard trucks and taken to public weighers for weighing. At the time

Strachan's was selling these bags and my duty was to see that those bags were loaded aboard trucks and taken to a public weigher for weighing." He stated that he was on the wharf when the truck arrived to pick up these bags, and he was there while the bags were loaded on the truck and, after the loading, he went with the truck to the public weigher. He received instructions from the chief wharf clerk of the plaintiff company to supervise the loading of the bags on the truck. The wharf clerk gave him his orders for the day, told him the bags were taken off the vessel, giving the name of the vessel and the buyer of the bags, and it was his job to see that they were taken from that pier to a public weigher for weighing. Upon questioning by the judge hearing the case, the witness stated that he did not actually see the bags discharged from the vessel, but that he saw the merchandise that was to be weighed by the public weigher from the time it left the wharf until it was weighed, and that he signed both of the slips (part of collective exhibit 1) to indicate that he was present at the time of weighing.

Mr. John A. Leithead, a customs inspector at the port of entry, was produced as a witness on behalf of the plaintiff and was asked to identify a white sheet containing handwritten notations as to weights, which is part of the official papers and is signed with his name, and to describe the procedure which led to the notations. He testified that the appraiser informed him that there were foreign bags and domestic bags commingled in the lot; that he took a hundred of the bags, emptied the ones in which a few ounces of grain remained, and weighed them. He did not know what vessel the bags came from but they were on pier 39. The bags he weighed represented less than 1 per centum of the entire quantity. It may be noted that in the case of jute burlap bags, the requirements of the statute (section 499, Tariff Act of 1930, as amended, 19 U. S. C. § 1499) governing the designation and examination of packages are relaxed by special regulation. (See section 14.1, Customs Regulations of 1943.) This witness further testified that there were from 23 to perhaps 25 bags packed inside 1 bag; that all of the bags seemed to be in good condition. The bags he weighed averaged about 10 ounces. He removed the bags from the dock and took them to the appraiser's building, but was unable to swear that they were part of this lot, although he did not believe that there could have been any other bags on pier 39 where he selected the ones for weighing purposes and to which pier he returned them. He admitted that the net quantity of 49,375 pounds, which appears on his official return of weight herein, was based on a unit of 10 ounces per bag and a total of 79,000 bags, which he accepted as correct based upon the entry figures. He admitted that he did not know whether there were 79,000 bags "there"—which we understand to mean on

pier 39—as he could not count them, nor did he know whether all of the bags came from the same vessel other than from information he received.

The testimony of the employee of the public weigher who weighed the bags taken from pier 39 by Mr. Kegresse was to the effect that the only information he had as to where the bags came from was given to him by Mr. Kegresse.

Mr. Sekin was recalled and counsel for the plaintiff attempted to prove that he had ascertained later the number of bags that were on the vessel, although he did not know that fact at the time the vessel arrived. In answer to a question as to whether he found out the number of bags which was aboard, the witness stated that he found out later "in an indirect manner." Through correspondence with the agents of the vessel, he received information concerning the quantity of bags carried on the vessel. An objection to this testimony was properly sustained by the judge presiding at the hearing. Copies of certain letters, covering the testimony which was ruled out, were offered in evidence, but an objection by Government counsel to their being received was sustained and they were marked collective exhibit 2 for identification.

Plaintiff also produced the testimony of the United States appraiser of merchandise at Galveston who examined the merchandise in suit. He stated that approximately 24 bags were stuffed into 1 bag in some cases, but that some of the bags were packed separately, flat; that he did not weigh them but examined them in order to obtain a value for the purpose of assessing the ad valorem duty.

It is apparent from this record that neither side weighed the entire amount of these empty grain bags prior to liquidation. The question to be determined is the quantity of bags contained in the shipment. The customs inspector on behalf of the Government arrived at the quantity by weighing 100 bags and multiplying the average weight of 1 bag by the approximate number of bags set forth in the appraisement entry. As stated in the letter of the deputy collector at Galveston to the Comptroller of Customs at New Orleans, which is part of the official papers transmitted by the collector, the customs weigher admits that the number of bags could have been less than that shown on the entry, and on the basis of the weight shown by the public weigher's certificates in evidence, the customs weigher estimated that the number of bags in the shipment was 22,176. The quantity of 79,000 bags appearing on the appraisement entry was based solely upon the information as reported by the master of the vessel and as also indicated by him on the vessel's manifest. However, it is noted that the master of the vessel also reported that the bags were of American origin, which plaintiff admitted was an error, as only a

portion consisted of domestic bags. Therefore, it seems safe to assume that the bags were not examined carefully by the master, and his report of 79,000 bags might have been an error. As above set forth, Mr. Sekin testified that it was very unusual for a vessel to carry 79,000 bags and admitted that he should have known at the time he made the appraisement entry that there would not be that many bags on board. Plaintiff, so far as the record shows and under the unusual circumstances outlined therein, had no opportunity before making entry to determine the number of bags carried by the vessel. These bags had not been ordered by or shipped to plaintiff in the ordinary course of business, but were among other articles remaining on the vessel when it was about to be turned over to the Army and were ordered removed by the Army. Plaintiff, as agent for the owner, was without the benefit of an invoice which ordinarily accompanies a shipment, but was forced to rely on the ship's manifest and the information given by the captain, as to the character of the merchandise in order to make entry for customs purposes. The collector forwarded to the court as part of the official papers photostatic copies of the public weigher's scale tickets which show net weights of 8,440 pounds and 5,420 pounds. There is also with the official papers attached to the appraisement entry, a document consisting of a sheet of paper on which appears certain matter, written in pen and ink and also in blue pencil, as follows:

Had a conversation with Mr. Sekin in regard to attached [appraisement invoice] based on public weigher's scale tickets attached net weights—

8,440
5,420
———
13,860 lbs.

Based on the above weights and using the basis of 1 lb. per bag would make total bags 13,860 bags weighing 13,860 lbs. By my weight cert. of 10 oz. for the bag would make a total of 22,176 × 10 oz. = 13,860 lbs.

Weighers Weights

| No. bags | Weights |
|----------|---------|
| 25 | 12½ lbs. |
| 25 | 16½ " |
| 25 | 16¼ " |
| 25 | 15¼ " |
| 100 | 62.50 lbs. |
| 1 bag | .625 lbs. |

(signed) L. A. Leithead

Mr. Leithead, a customs inspector at the port of entry, testified on behalf of the plaintiff, his testimony being summarized *ante*. Government counsel at the hearing and in the brief filed took the position that this witness had not seen the bags in suit discharged from the

vessel and that he was unable to identify the bags which he saw on the pier and at the public weigher's as those here involved. The court is satisfied from a perusal of all of the official papers that the bags the subject of Mr. Sekin's testimony were the identical bags which are the subject of protest.

The Government offered no testimony to refute the weights as shown by the public weigher's scale tickets in evidence, apparently relying upon the claim that the evidence produced on behalf of the plaintiff failed to identify the bags weighed by the public weigher as those here involved. The record shows that the public weigher weighed all of the bags taken from pier 39, which we find to be those here involved. Both the plaintiff and the customs officials seem to agree that the quantity is determined by the weight of the bags. We find the weight of the bags imported to be 13,860 pounds which at the agreed weight of 0.625 pound per bag would result in a quantity of 22,176 bags imported. The amended protest claims that duty should not have been assessed on 65,140 bags which were not landed from the vessel nor imported. However, the evidence discloses that 22,176 bags were landed and imported. The difference between that amount and 79,000 bags, upon which duty was assessed, is 56,824 bags, which constituted a nonimportation and upon which no duty is assessable under the rule enunciated in *Lawder* v. *Stone*, 187 U. S. 281, 47 L. ed. 178, and *Marriott* v. *Brune*, 9 How. 619, 13 L. ed. 282.

Judgment will therefore issue granting an allowance to the plaintiff for 56,824 bags not imported.