UNITED STATES *v.* R. H. COMEY BROOKLYN Co. (No. 3045[1])

United States Court of Customs Appeals, June 11, 1928

*Charles D. Lawrence*, Assistant Attorney General (*Ralph Folks* and *Oscar Igstaedter*, special attorneys, of counsel), for the United States.
*James W. Bevans* (*Edward B. Sharretts* of counsel) for appellee.

[Oral argument May 10, 1928, by Mr. Igstaedter and Mr. Bevans]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

The merchandise in this case, a large number of pieces of hemp braid, was imported and entered for warehouse January 26, 1923. June 16 following it was withdrawn from warehouse on an entry for consumption and the duties then paid. The appellee here, who is the manufacturer and exporter, thereafter manufactured the braid by bleaching the same and exported it from the United States June 30, 1926, under claim for drawback. The collector refused to allow the drawback on the ground that the manufactured braid was exported more than three years after the delivery from warehouse, at which time the consumption entry was made, basing his denial wholly upon the amendment to the Treasury regulation hereinafter referred to. Exporter protested this denial. The United States Customs Court sustained the protest and directed the collector to issue a certificate for the payment of the drawback claim. The Government appealed to this court. No question of fact is involved.

[1] T. D. 42843.

Section 313 of the Tariff Act of 1922, upon which the claim is founded, is as follows:

That upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties, * * *. The drawback on any article allowed under existing law shall be continued at the rate herein provided. The imported merchandise used in the manufacture or production of articles entitled to drawback of customs duties when exported shall, in all cases where drawback of duties paid on such merchandise is claimed, be identified, the quantity of such merchandise used and the amount of duties paid thereon shall be ascertained, the facts of the manufacture or production of such articles in the United States and their exportation therefrom shall be determined, and the drawback due thereon shall be paid to the manufacturer, producer, or exporter, the agent of either, or to the person to whom such manufacturer, producer, exporter, or agent shall in writing order such drawback paid, under such regulations as the Secretary of the Treasury shall prescribe.

Remaining parts of the section provide for drawback on certain articles manufactured or produced in the United States from merchandise not imported but upon which an internal-revenue tax has been paid, and that imported salt in bond may be used in curing fish taken under the conditions provided in the section and the duty remitted also under such regulations as the Secretary of the Treasury shall prescribe.

Pursuant to the authority delegated to him in said section, the Secretary of the Treasury adopted and promulgated article 960 of the Customs Regulations of 1923, which we quote:

ART. 960. The imported merchandise used in the manufacture or production of exported articles must be identified and the quantities used must be ascertained under such regulations as the Secretary of the Treasury shall prescribe. The records to be kept and the methods to be pursued to identify the imported merchandise and to establish the quantities thereof used will be prescribed by the Secretary of the Treasury in each case in the drawback rate and must be agreed to by the manufacturer in a sworn statement to be filed as the basis of such rate.

Other appropriate regulations relating to drawback under said section, not relevant to the issues in this case, were also adopted.

In T. D. 41384, Treas. Dec. 49, p. 329, promulgated March 1, 1926, the Secretary of the Treasury amended said article 960 by adding thereto the following:

In no event will identification of imported merchandise be accepted under established drawback rates when such merchandise has been entered for consumption or withdrawn from warehouse more than three years prior to the date of exportation of the product on which drawback is claimed.

If this amendment is valid, the judgment below must be reversed; if not, it must be affirmed.

The court below, one member dissenting, after a very careful examination of the evidence offered in support of exporter's claim,

expressly found that the identification of the merchandise upon which the drawback claim was based was complete; that the exporter had complied with all the requirements of the law and the provisions of said article 960, before it was amended, and that it was entitled to the refund or drawback. It held that said amendment thereto was void as not within the power of the Secretary to make and enforce.

The Government does not deny that exporter complied with article 960 before it was amended, but contends that by reason of the provision thereof that—

In no event will identification of merchandise be accepted * * * when such merchandise has been entered for consumption * * * more than three years prior to the date of exportation of the product on which drawback is claimed,

which, it argues, has the force of law, the exporter is not entitled to recover in this case because, and such is the fact, the merchandise was entered for consumption more than three years prior to the date of exportation of the product on which the drawback is claimed. The effect of this regulation plainly is to render it impossible for claimants to obtain drawback unless the imported materials are manufactured and exported within three years after they are entered for consumption, because, if proof of identification must be made within such period, the imported materials must be manufactured within that time.

The question is, therefore, has the Secretary of the Treasury authority to make and enforce the amendment imposing a time limit upon the right of drawback under the section. The section provides that—

The imported merchandise used in the manufacture or production of articles entitled to drawback of customs duties when exported shall, in all cases where drawback of duties paid on such merchandise is claimed, be *identified, the quantity of such merchandise used and the amount of duties paid thereon shall be ascertained, the facts of the manufacture or production of such articles in the United States and their exportation therefrom shall be determined,* * * * under such regulations as the Secretary of the Treasury shall prescribe. (Italics ours.)

It is plain that therein no such limit is prescribed, nor is any power given to the Secretary to fix one. That officer may prescribe regulations for identifying the merchandise on which drawback is claimed, and for ascertaining the quantity used, the amount of duties paid thereon, the facts of manufacture or production of the articles in the United States, and their exportation therefrom. It appears that Congress deliberately omitted to grant the Secretary any further authority in the matter or to itself prescribe a limit of time within which the imported materials might be manufactured in this country and exported with right of drawback.

It is unnecessary to enter into any detailed statement of the arguments pro and con adduced upon this question. Exporter asserts

in its brief, and the Government does not deny, that since 1798 the tariff legislation has provided for refunds of duties upon imported materials which do not enter into consumption in the United States, but are used in the manufacture of articles exported to foreign countries. For the purposes of this opinion it is unnecessary for us to go further back than the act of August 5, 1861, section 4 of which contained a provision not different, except as to amount of refund, from section 313, for the return or drawback of duties paid. See *Campbell* v. *United States*, 107 U. S. 407.

The court said, in *National Lead Co.* v. *United States*, 252 U. S. 140, construing section 22 of the Act of 1890, that a like provision had been contained in all tariff acts down to and including the Act of 1894.

Section 30 of the Tariff Act of 1897, section 25 of the Act of 1909, and paragraph O of section IV of the Act of 1913 contain substantially the same provisions.

Under these statutes the Secretary of the Treasury has, as therein authorized, from time to time promulgated various and very numerous regulations relating to drawback provisions. To examine or refer to them all would take much time and space. We are unable to find in any of the statutes referred to, or in any of such regulations, any provision which seeks in terms, or by implication to fix, a *time limit* after which imported merchandise, used as materials for the manufacture of things in this country, may not be exported, and the right of drawback exercised. It is fair to the Government to say that no claim is made by it that such limitation has been expressly fixed by statute or been attempted by regulation of the Treasury Department until the adoption of the amendment to article 960 as found in T. D. 41384.

In considering the question of drawback, it is well to bear in mind that the right thereto may exist under various circumstances: (*a*) Where articles have been manufactured in whole or in part of dutiable imported materials and then exported, such manufacture not having been accomplished while the merchandise was in customs custody; (*b*) where merchandise has been exported directly from bonded warehouse or uninterrupted customs custody in the condition in which it was imported; (*c*) where articles have been manufactured or manipulated in bonded warehouse under customs supervision. The first two provisions may be found in Revised Statutes, sections 3019 and 2977. The last one seems to have first appeared in the Tariff Act of 1897, section 15. All are to be found in the Tariff Act of 1922. See secs. 313, 556, 557, 558, and 562.

In the statutes providing for the exportation of imported merchandise stored in bonded warehouse, and not there processed or manufactured, a time limit of three years to the right of drawback

has often, if not always, been fixed. These sections, however, are wholly apart, separate, and distinct from the provisions for the exportation of articles manufactured from imported materials which have been entered for consumption and manufactured outside of bonded warehouses or customs custody and inspection. See sec. 558 of the present act.

It was said by the Supreme Court in *Tide Water Oil Co.* v. *United States*, 171 U. S. 210 at 216, speaking of Revised Statutes, section 3019, of which section 313 here involved is substantially a reenactment, that—

The object of the section was evidently not only to build up an export trade, but to encourage manufactures in this country, where such manufactures are intended for exportation by granting a rebate of duties upon the raw or prepared materials imported, and thus enabling the manufacturer to compete in foreign markets with the same articles manufactured in other countries.

It is obvious that the limitation of three years for the exercise of such right now claimed by the Government, if valid, would tend to prevent rather than to carry out the object of the provision as announced by the Supreme Court.

There is no claim made by the Government that there has existed any practice in the administration of the law of the character contemplated in the said amendment to article 960, nor is it claimed that the Treasury Department, prior to the adoption of that amendment, has claimed the right to impose such limitation.

In this connection exporter here points out, and the Government does not challenge the correctness of the statement, that in 1881 the Treasury Department submitted to the Attorney General the question of whether or not, under said section 3019 of the Revised Statutes, the limitation of three years' time, provided in section 3017 thereof that—

No drawback of duties shall be allowed on merchandise entitled to debenture under existing laws, unless such merchandise shall be exported from the United States within three years from the date of the importation of the same—

was applicable to merchandise manufactured of imported materials. Just how the question came up we are not advised, but it is quite clear that the opinion of the Attorney General then was that the right to recover drawback on such manufactured articles was not subject to the limitations of time contained in section 3017. See Treasury Department Synopsis of Decisions, 1885, p. 49, No. 6748.

We think it is a fair assumption that even if the Treasury Department had theretofore insisted on such three-year limitation period it then and thereafter abandoned the same, else why would it have promulgated the opinion of the Attorney General for the "Information and guidance" of customs officials? If there were any ambiguity in the language of the various earlier statutes, of which section 313

is the last enactment, the successive reenactments thereof, without change in the respect under consideration, would seem to be a legislative adoption of the views of the Attorney General, acquiesced in by the Treasury Department, sufficient to settle the issue here. In addition to this, it may be noted that Revised Statutes, section 3017, was expressly repealed by section 642 of the Tariff Act of 1922.

The power to fix a statute of limitations resides wholly in the legislative body.

Limitations are created by statute and derive their authority therefrom; they are legislative and not judicial.

(37 Corpus Juris, 686 and cases cited.)

The delegation of ministerial authority to make the regulations specified in the last part of section 313 clearly affords no warrant for the attempt of the Secretary of the Treasury to fix by regulation the time within which the products manufactured from dutiable imported materials must be exported in order to entitle the exporter to drawback.

The case of *Campbell* v. *United States, supra,* is so apt and controlling of the issue here, that we quote somewhat liberally therefrom. That case involved the power of the collector, acting under the explicit directions of the Secretary of the Treasury, to deny a drawback, the claimant having complied with the drawback regulations adopted under the fourth section of the Act of August 5, 1861, before referred to.

It would be a curious thing to hold that Congress, after clearly defining the right of the importer to receive drawback upon subsequent exportation of the imported article on which he had paid duty, had empowered the Secretary by regulations, which might be proper to secure the Government against fraud, to defeat totally the right which Congress had granted. If the regulations of themselves worked such a result, no court would hesitate to hold them invalid as being altogether unreasonable.

The Court of Claims makes the mistake of supposing that the claim is founded on the regulations of the Secretary of the Treasury. This view can not be sustained. It is the *law* which gives the right, and the fact that the customs officers refuse to obey these regulations can not defeat a right which the act of Congress gives.

It is an error to suppose that the officers of customs, including the Secretary, are in regard to this law created a special tribunal to ascertain and decide conclusively upon the right to drawback. Their function is entirely ministerial. They are authorized to pass upon no question essential to the claimant's right so as to conclude him in a court of competent jurisdiction. From the moment he presents his sworn entry they simply ascertain quantities, identify and mark packages, accept bonds and sureties, and see that the exported article leaves the port in the ship. These and like duties being discharged, it is the collector's duty—a mere ministerial function—to give the certificate of drawback. * * * He exercises no judicial or quasi judicial function. He concludes nobody's rights and has no power to do so. The rights which the law gives can not be defeated by his refusal to act nor by his decision that no drawback was due.

A suggestion is made that the right to enforce the drawback in the court is affected by the fact that it is a gratuity.

> It has never been supposed that there was a gratuity in all the cases where imports are free of duty. The purpose of the drawback provision is to make duty free imports which are manufactured here and then returned whence they came or to some other foreign country—articles which are not sold or consumed in the United States. * * *
>
> But if it were a free gift it is not for the officers of the Government to defeat the will of Congress on this subject by refusing to execute the law.

As to the power of the Secretary to make regulations, and the effect of a long-continued administrative practice, consult *Morrill* v. *Jones*, 106 U. S. 466; *Swan & Finch Co.* v. *United States*, 190 U. S.143; *Davis* v. *Miller*, 194 U. S. 451; *Weaver* v. *Blair*, 19 Fed. 2d. 16.

It is pointed out by the Government that we have, in numerous cases which it cites, sustained regulations of the Secretary of the Treasury as to the time within which certain acts must be performed. It is argued that the rule to be derived therefrom controls the issue here in the Government's favor. We have carefully examined all these cases and are unable to agree with this view. As the court below well said:

> It is true that courts have held his (the Secretary's) regulations valid when falling within the purview of his power, and the cases cited are to that effect.

The Government in this court especially relies upon the case of *MacNichol Packing Co. et al.* v. *United States*, 14 Ct. Cust. Appls. 400, T. D. 42050. That case involved the part of said section 313 providing for a refund on salt, imported in bond, when used in curing fish taken under certain conditions. The applicable Treasury regulations provided that the bond under which the salt was imported and entered in warehouse might be canceled if it was established that the salt was so used, proof of which fact was required to be presented on or before the 1st day of January next after the date of the bond. It was also provided, if the salt covered by the bond had not then all been used, that the bond might be extended and the salt again entered for rewarehouse and withdrawn on condition that the warehouse privileges should not be extended beyond three years. The required proof was not presented to the collector within the time fixed by the regulations, nor was any request made to extend the bond. More than one year after the same was due the importer tendered proof that the salt had been used as provided in the section, and asked for remission of duties. It was refused on the ground that a renewal of the bond had not been asked for, and that the tendered proof was too late. This court, by Presiding Judge Graham, after a comprehensive review of the cases, sustained the collector's action under the regulations, expressing the opinion that the regulations did not alter, add to, or detract from the statute, because, they "only have in mind an annual accounting between the importer and the Government." It will be observed that the case did not involve merchandise manufactured from imported materials and then

exported, and further, that, as already pointed out, section 557 provides that merchandise in bonded warehouse may there remain not more than three years. We find nothing in that or any other of the cases cited by the Government that controls the issue here.

Among its contentions it may be noted the Government points out that if the Secretary of the Treasury has no power to fix a time limit in such a case as this an exporter might make application for drawback "whenever he saw fit, within a year if convenient, and perhaps after 5, 10, or 50 years, if he saw fit," which, it is argued might perhaps result in a depletion of the funds of the United States. As to this it may be said that the remedy, if one is needed, is with Congress, which, so far, does not seem to have been moved to action because of the suggested possibility, the menace of which, if it is a menace, appears to have existed since the beginning of tariff legislation.

The judgment below is *affirmed.*