(C. D. 1777)

SOCONY VACUUM OIL CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 26, 1956)

*Sharretts, Paley & Carter* (*Amos B. Sharretts, Joseph F. Donohue*, and *Richard F. Weeks* of counsel) for the plaintiff.

*George S. Leonard*, Acting Assistant Attorney General (*Richard E. FitzGibbon* and *William J. Vitale*, trial attorneys), for the defendant.

Before EKWALL, JOHNSON, and DONLON, Judges; DONLON, J., not participating

JOHNSON, Judge: The merchandise involved in this case consists of crude petroleum imported from Venezuela on or about March 15, 1952. It was entered free of duty under paragraph 1733 of the Tariff Act of 1930, but was assessed with internal revenue tax at the rate of one-fourth of 1 cent per gallon under section 3422 of the Internal Revenue Code [as modified by the trade agreement with Venezuela,

T. D. 50015]. The protest does not attack the rate of tax, but claims that it was assessed on too great a quantity of merchandise; that it should have been assessed only on the net quantity actually imported, in accordance with section 315 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938; and that an allowance should have been made for bottom sediment and water in excess of the quantity usually found in or upon such merchandise, to wit, 1 per centum. By amendment, it is claimed that section 15.7 (a) of the Customs Regulations of 1943 is unreasonable and void insofar as it requires that an application for an allowance for excessive moisture or other impurities be filed with the collector within 10 days after the return of weight has been received by him.

At the trial, it was agreed that 1 per centum of bottom sediment and water is the usual amount found in crude petroleum and that any amount in excess would be considered excessive within the purview of section 507, Tariff Act of 1930, citing a decision of the Bureau of Customs, 69 Treas. Dec. 466, T. D. 48204, paragraph 5.

There were received in evidence entry No. 820911, showing entry of 5,055,204 gallons of crude petroleum and liquidation on 5,043,663 gallons (plaintiff's exhibit 1); the official gauger's return and the customs inspector's return, both showing a net landed total of 5,043,663 gallons (plaintiff's exhibits 2 and 4, respectively); and a notice of discrepancy showing the entered quantity and the net landed quantity (plaintiff's exhibit 5). There was also introduced into evidence a report of the United States Customs Laboratory, showing that a sample from this entry contained 1.6 per centum bottom sediment and water (plaintiff's exhibit 3).

It was conceded by counsel for the plaintiff that customs Form 4317, referred to in section 15.7 (a), Customs Regulations of 1943, was not filed in this case.

The pertinent provisions of the statutes and the regulations are as follows:

Tariff Act of 1930:

SEC. 507. TARE AND DRAFT.

The Secretary of the Treasury is hereby authorized to prescribe and issue regulations for the ascertainment of tare upon imported merchandise, including the establishment of reasonable and just schedule tares therefor, but in no case shall there be any allowance for draft or for impurities, other than excessive moisture and impurities not usually found in or upon such or similar merchandise.

SEC. 315 [as amended by the Customs Administrative Act of 1938].

* * * Insofar as duties are based upon the quantity of any merchandise, such duties shall, except as provided in paragraph 813 and section 562 of this Act (relating respectively to certain beverages and to manipulating warehouses), be levied and collected upon the quantity of such merchandise at the time of its importation. * * *

Customs Regulations of 1943:

**15.7 Excessive moisture and other impurities; application for allowance; procedure.**—(a) Application for an allowance for excessive moisture or other impurities under section 507, Tariff Act of 1930, shall be made on customs Form 4317 and filed with the collector of customs within 10 days after the return of weight has been received by him.

(b) The collector shall cause such investigation to be made as may be necessary to determine whether or not the merchandise contains excessive moisture or other impurities not usually found in or upon such or similar merchandise, together with the amount thereof, and, if necessary, may refer the application to the appraiser for such determination.

(c) If the collector is satisfied from the reports received that the claim is valid, due allowance shall be made in the liquidation of the entry. (Sec. 507, 46 Stat. 732; 19 U. S. C. 1507.)

The issue before the court is whether plaintiff may be granted an allowance for excessive bottom sediment and water, although no application for such an allowance was filed with the collector as required by section 15.7 (a) of the customs regulations, *supra.*

The regulations involved herein were issued by the Secretary of the Treasury pursuant to the authority given to him by section 507 of the Tariff Act of 1930. Regulations promulgated under a specific provision of the tariff act are mandatory, and compliance therewith is a condition precedent to the right accorded by the statute. *United States* v. *Morris European & American Express Co.*, 3 Ct. Cust. Appls. 146, T. D. 32386; *United States* v. *Ricard-Brewster Oil Co.*, 29 C. C. P. A. (Customs) 192, C. A. D. 191; *United States* v. *Browne Vintners Co., Inc.*, 34 C. C. P. A. (Customs) 112, C. A. D. 351. Such regulations must be in harmony with the statute, reasonable, uniform in operation, and equal in effect. *United States* v. *Morris European & American Express Co., supra; United States* v. *R. H. Comey Brooklyn Co.*, 16 Ct. Cust. Appls. 248, T. D. 42843. If not challenged, they have the force and effect of law. *Gallagher & Ascher* v. *United States*, 14 Ct. Cust. Appls. 38, T. D. 41548; *Thornley & Pitt a/c Earl Investment Corpn.* v. *United States*, 33 Cust. Ct. 136, C. D. 1645. In order to prevail, plaintiff must sustain the burden of proving compliance therewith or of establishing that the regulations are unreasonable or contrary to the statute. *United States* v. *McGraw Wool Co.*, 19 C. C. P. A. (Customs) 205, T. D. 45296; *United States* v. *Browne Vintners Co., Inc., supra; Davies, Turner & Co.* v. *United States*, 25 Cust. Ct. 182, C. D. 1283.

In *American Bitumuls Co.* v. *United States*, 10 Cust. Ct. 106, C. D. 732, the court reviewed the tariff provisions and the decisions of the courts as to customs regulations pertaining to allowance for excessive moisture and impurities, and it was found that, prior to the enactment of the Tariff Act of 1922, such regulations were merely directory. *In re Mattewan Manufacturing Company*, 3 Treas. Dec. 256, T. D.

22078; *In re Thomas Kenworthy's Sons*, 11 Treas. Dec. 437, T. D. 27220; *In re Lawrence Johnson & Co.*, 32 Treas. Dec. 177, T. D. 37007. However, by the Tariff Act of 1922, and subsequently by the Tariff Act of 1930, Congress authorized the Secretary of the Treasury to prescribe regulations establishing just and reasonable tares and specifically prohibited any allowance for draft or impurities other than excessive moisture and impurities not usually found in such merchandise. Regulations issued under this authority have been held to be mandatory. *United States* v. *Ingram & Co.*, 17 C. C. P. A. (Customs) 228, T. D. 43668; *York Feather & Down Corp.* v. *United States*, 40 C. C. P. A. (Customs) 51, C. A. D. 496; *Pacific Coast Glass Co.* v. *United States*, 63 Treas. Dec. 1220, Abstract 22732; *American Bitumuls Co.* v. *United States, supra*; *The Dan Malloy Company* v. *United States*, 35 Cust. Ct. 315, Abstract 59486.

In the instant case, it is claimed that the wording of the statute implies an affirmative direction that an allowance be made for excessive moisture and impurities; that all that is required is the presence of excessive moisture and impurities; and that the regulations have added two impediments to allowance, namely, the collector's satisfaction based on the reports received and the filing of an application.

Plaintiff objects to section 15.7 (c) of the regulations, in that it provides that the collector may make an allowance, if he is satisfied from the reports received that the claim is valid. The reports referred to are those resulting from the investigation which the collector causes to be made upon receiving an application for an allowance. It is claimed that the collector is not required to act upon the actual facts of the case, but upon the reports. This argument is not valid. Unless it is deemed necessary for the collector himself to make the investigation (which is not claimed herein), it is proper for him to ascertain the facts from reports made by officials who are presumably discharging their duties. This procedure is not an impediment to the granting of an allowance but a proper method of determining what, if any, allowance should be made. It is not a limitation upon the provisions of the statute, such as was involved in the cases cited by plaintiff, *Morrill* v. *Jones*, 106 U. S. 466, and *Geo. Wm. Rueff, Inc.* v. *United States*, 72 Treas. Dec. 290, T. D. 49151.

Plaintiff construes section 507, *supra*, as authorizing the Secretary of the Treasury to prescribe regulations for the ascertainment of tare, but not to go further and prescribe regulations for the ascertainment of draft, excessive moisture, and impurities. This contention is based upon a distinction between the terms "tare," "draft," and "impurities." The term "draft" refers to an arbitrary deduction which had been customarily allowed to compensate for any loss that might occur in handling the merchandise. *Seeberger* v. *Wright & Lawther Oil & Lead Manufacturing Co.*, 157 U. S. 183. No such

allowance may be made under the statute. While the term "tare," as strictly construed, does not cover moisture and impurities, that term, as used in tariff statutes, does include extraordinary impurities. *Shallus* v. *United States*, 1 Ct. Cust. Appls. 316, T. D. 31408; *United States* v. *Baker Castor Oil Co.*, 2 Ct. Cust. Appls. 338, T. D. 32076. Therefore, the Secretary's authority to make regulations for the ascertainment of tare includes the authority to make regulations for the ascertainment of excessive moisture and impurities, any allowance therefor being limited to quantities not usually found in or upon such or similar merchandise. Plaintiff's argument was answered in *Frame & Co.* v. *United States*, 46 Treas. Dec. 355, T. D. 40476, wherein it was stated (p. 357):

* * * We construe the words, "In no case shall there by any allowance for draft or for impurities, other than excessive moisture," to be cognate with and a part of the tare referred to in the first part of the paragraph, which the Secretary of the Treasury is authorized to prescribe regulations for ascertaining.

We find, therefore, that the Secretary of the Treasury had authority under the statute to prescribe regulations for the ascertainment of, and allowance for, excessive moisture and impurities. Such regulations have the force and effect of law and must be complied with, provided they are reasonable and in accord with the statute.

Plaintiff claims that section 15.7 (*a*) of the regulations is unreasonable, in that it requires the filing of an application for an allowance within 10 days after the return of weight has been received by the collector and does not provide for giving the importer actual notice of its receipt by the collector.

Similar regulations have been before the courts on other occasions. In *Frame & Co.* v. *United States, supra,* the regulations provided that the application for an allowance "must be filed with the collector not later than five days after the return of weight." Compliance with the regulation was held mandatory and it was stated (p. 357):

If the importer had acted promptly and filed his application for reduction of the duty on the excessive moisture or absorption of water on the voyage within five days after the return of the weight, the purpose of the regulations, which are reasonable, could have been effectuated, and if the contention of the importer is correct, relief could have been afforded him. The object of the regulation was for the wise purpose of enabling the facts to be ascertained while they were fresh, before any change in the condition of the merchandise, while it could be examined and correct judgment formed as to the amount and weight of the moisture.

In *Pacific Coast Glass Co.* v. *United States, supra,* Article 732, Customs Regulations of 1923, which provided that application for an allowance "must be filed with the collector not later than 10 days after the return of weight," was held valid and reasonable and compliance therewith a condition precedent to the right of recovery for excessive moisture.

The same contention as plaintiff makes in the instant case was before this court in *American Bitumuls Co.* v. *United States, supra,* where the regulation provided, as here, that the application be filed with the collector within 10 days after the return of weight had been received by him. The court held it reasonable and valid, stating (p. 110):

Inasmuch as the regulations require dock books showing the completed returns of weight to become public records within 3 days after a ship's cargo has been weighed, it is clear that an undue hardship or unreasonable time limitation is not placed upon the importer. The cases cited by the plaintiff in this respect are not in point. The regulations there required of the importer conditions impossible to perform or such as would require the importer to surrender his legal rights, while here all that is required is diligence upon the part of the importer. * * *

Plaintiff claims that the regulation in question results in an unwarranted hardship on the importer, but has offered nothing in support of this contention except the statement that there is no proof showing when the weigher's return or the dock book became a public record. Sections 27.39 and 27.40 of the Customs Manual of 1943, in effect at the time of this importation, provide that weighing, gauging, or measuring officers shall make correct entries in dock books of goods weighed, gauged, or measured; that reports shall be prepared from said dock books; that such reports shall be filed in the collector's office 3 days after the work has been completed; and that certificates or copies shall be furnished to parties in interest at their expense. Under these circumstances, it appears that the importer could have obtained the needed information in time to file an application for an allowance, had due diligence been exercised.

It is further claimed that internal revenue tax should not have been assessed upon the bottom sediment and water in the crude petroleum herein on the ground that they constitute worthless, extraneous foreign matter, which did not enter the commerce of the country, and which is not merchandise within the purview of the tariff act and not properly the subject of duty, and that, in such cases, compliance with the regulations is not a condition precedent to recovery.

It is doubtful that bottom sediment and water which actually arrive here and which, so far as appears, enter the commerce of the country as part of the crude petroleum imported, can be considered a nonimportation. *United States* v. *Cummings,* 3 Ct. Cust. Appls. 291, T. D. 32576. That case involved a claim for an allowance for dregs and lees in ale, which the court denied, stating (p. 296):

* * * It is true that such lees are not usable ale, but neither are they a foreign impurity in the ale. They are really part of the importation, and the assessment was properly imposed upon the ale as an entirety.

Furthermore, section 315, as amended, which provides that duties are to be assessed upon the quantity of merchandise imported, must be construed with section 507 insofar as excessive moisture and impurities are concerned. It is to be noted that an allowance is permitted only as to *excessive* moisture and impurities and that the quantity of moisture and impurities usually found in the merchandise, whether or not worthless, is subject to duty. *Cargill Grain Co., Inc.* v. *United States*, 30 C. C. P. A. (Customs) 78, 88, C. A. D. 219. In our view, therefore, moisture and impurities are not to be considered nonimportations within the principle of *Lawder* v. *Stone*, 187 U. S. 281, which involved decayed and worthless merchandise, but are subject to duty and allowances as provided in section 507 and the regulations promulgated thereunder. In *York Feather & Down Corp.* v. *United States, supra*, a case involving a claim that dirt and impurities were not subject to duties, the court stated that the case of *United States* v. *Browne Vintners Co., Inc., supra*, which involved a nonimportation, was not applicable. It was held that, since no application for an allowance for excessive impurities had been filed in accordance with the regulations, plaintiff could not recover.

For the reasons stated, we hold that the collector's assessment of internal revenue tax on the merchandise involved herein was proper, and that, in view of the noncompliance with the mandatory regulations, plaintiff's claim for an allowance for bottom sediment and water in excess of the quantity usually found in such merchandise must be overruled.