Socony Vacuum Oil Co., Inc. v. United States (No. 4882) [1]

United States Court of Customs and Patent Appeals, March 29, 1957

*Sharretts, Paley & Carter* (*Joseph F. Donohue* and *Richard F. Weeks* of counsel) for appellant.

[1] C. A. D. 641.

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Richard H. Welsh* and *William J. Vitale*, trial attorneys, of counsel), for the United States.

[Oral argument December 5, 1956, by Mr. Donohue and Mr. Welsh]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges

JOHNSON, Chief Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, entered pursuant to its decision (C. D. 1777), overruling a protest against the collector's assessment of internal revenue tax on an importation of crude petroleum imported from Venezuela.

The merchandise here involved was entered free of duty under paragraph 1733 of the Tariff Act of 1930 but was assessed by the collector with internal revenue tax at the rate of one-fourth of one cent per gallon under section 3422 of the Internal Revenue Code, as modified by the trade agreement with Venezuela, T. D. 50015.

The protest does not attack the rate of tax, but claims that it was assessed on too great a quantity of merchandise; that it should have been assessed only on the net quantity actually imported, in accordance with section 315 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938; and that an allowance should have been made for bottom sediment and water in excess of the quantity usually found in or upon such merchandise. This latter quantity, by stipulation of counsel, is one per cent.

By amendment, appellant further claimed before the Customs Court, as it does here, that section 15.7 (a) of the Customs Regulations of 1943 is unreasonable and void for reasons which will hereinafter be set forth.

The pertinent provisions of the Tariff Act and Customs Regulations are as follows:

SEC. 507. TARE AND DRAFT.

The Secretary of the Treasury is hereby authorized to prescribe and issue regulations for the ascertainment of tare upon imported merchandise, including the establishment of reasonable and just schedule tares therefor, but in no case shall there be any allowance for draft or for impurities, other than excessive moisture and impurities not usually found in or upon such or similar merchandise.

SEC. 315 [as amended by the Customs Administrative Act of 1938]

* * * Insofar as duties are based upon the quantity of any merchandise, such duties shall, except as provided in paragraph 813 and section 562 of this Act (relating respectively to certain beverages and to manipulating warehouses), be levied and collected upon the quantity of such merchandise at the time of its importation. * * *

Customs Regulations of 1943:

> 15.7 *Excessive moisture and other impurities; application for allowance; procedure.*—(a) Application for an allowance for excessive moisture or other impurities under section 507, Tariff Act of 1930, shall be made on customs

Form 4317 and filed with the collector of customs within 10 days after the return of weight has been received by him.

(b) The collector shall cause such investigation to be made as may be necessary to determine whether or not the merchandise contains excessive moisture or other impurities not usually found in or upon such or similar merchandise, together with the amount thereof, and, if necessary, may refer the application to the appraiser for such determination.

(c) If the collector is satisfied from the reports received that the claim is valid, due allowance shall be made in the liquidation of the entry. (Sec. 507, 46 Stat. 732; 19 U. S. C. 1507.)

The record indicates, and there is no dispute as to this fact, that the instant importation contained 1.6% bottom sediment and water.

It was conceded by counsel for appellant that customs Form 4317, referred to in section 15.7 (a), supra, was not filed in this case.

The issue before this court, therefore, is whether appellant may be granted an allowance for the excessive bottom sediment and water (0.6% of the net landed total gallons of the crude petroleum) although no application for such allowance was filed with the collector as required by section 15.7 (a) of the customs regulations, supra.

We are of the opinion that this question must be answered in the negative for reasons which will hereinafter be set forth.

In the opinion of the Customs Court, the law applicable to the instant case was adequately set forth as follows:

The regulations involved herein were issued by the Secretary of the Treasury pursuant to the authority given to him by section 507 of the Tariff Act of 1930. Regulations promulgated under a specific provision of the tariff act are mandatory, and compliance therewith is a condition precedent to the right accorded by the statute. United States v. Morris European & American Express Co., 3 Ct. Cust. Appls. 146, T. D. 32386; United States v. Ricard-Brewster Oil Co., 29 C. C. P. A. (Customs) 192, C. A. D. 191; United States v. Browne Vintners Co., Inc., 34 C. C. P. A. (Customs) 112, C. A. D. 351. Such regulations must be in harmony with the statute, reasonable, uniform in operation, and equal in effect. United States v. Morris, European & American Express Co., supra; United States v. R. H. Comey Brooklyn Co., 16 Ct. Cust. Appls. 248, T. D. 42843. If not challenged, they have the force and effect of law. Gallagher & Ascher v. United States, 14 Ct. Cust. Appls. 38, T. D. 41548; Thornley & Pitt a/c Earl Investment Corpn. v. United States, 33 Cust. Ct. 136, C. D. 1645. In order to prevail, plaintiff must sustain the burden of proving compliance therewith or of establishing that the regulations are unreasonable or contrary to the statute. United States v. McGraw Wool Co., 19 C. C. P. A. (Customs) 205, T. D. 45296; United States v. Browne Vintners Co., Inc., supra; Davies, Turner & Co. v. United States, 25 Cust. Ct. 182, C. D. 1283.

Consistent with the foregoing law, it was decided in United States v. Ingram & Co., 17 C. C. P. A. (Customs) 228, T. D. 43668, that paragraphs 732 and 733 of the Customs Regulations of 1923, which paragraphs were the prototypes of section 15.7, supra, were mandatory and that compliance therewith was a condition precedent to the right accorded by section 506 of the Tariff Act of 1922, the predecessor of section 507, supra. This interpretation was extended to section 15.7

and paragraph 507, here involved, in *York Feather & Down Corp.* v. *United States*, 40 C. C. P. A. (Customs) 51, C. A. D. 496. Though in each of these cases the validity of the involved regulations was not questioned, these cases, insofar as they establish the mandatory nature of section 15.7, are here applicable.

Appellant argues that

\* \* \* \* \* \* \*

Turning to Section 507 of the Tariff Act, it will be seen that there are two separate and distinct provisions brought together in one sentence. In the first place, the Secretary of the Treasury is authorized to prescribe and issue regulations for the ascertainment of tare. In the second place, it is provided that there shall be no allowance for draft or impurities other than excessive moisture and impurities not usually found in or upon such or similar merchandise. \* \* \*.

Appellant then alludes to the distinction between tare and draft and also between draft and impurities, pointing out that "draft" is "an arbitrary deduction which has been customarily allowed to compensate for any loss that might occur in handling the merchandise," and apparently relies on the common definition of "tare."

Appellant continues:

\* \* \* There being a distinction between tare and draft and impurities, the authorization to the Secretary to issue regulations for the ascertainment of tare cannot be construed to permit him to go further and prescribe regulations for the ascertainment of the excessive moisture and impurities which are not usually found in or upon such or similar merchandise. Therefore, the regulation which the Secretary issues for the ascertainment of tare stands on a different footing from that which he issues for the determination of moisture or impurities which shall be allowed. It is familiar doctrine that regulations issued under the first category may be deemed to have the force and effect of law, while regulations issued in the second category do not enjoy that degree of effectiveness. \* \* \*.

We cannot agree with this argument. Granted, the term "tare," as commonly used, does not cover moisture and impurities; this term, however, as used in the tariff statutes, does include extraordinary impurities. *Shallus* v. *United States*, 1 Ct. Cust. Appls. 316, T. D. 31408; *United States* v. *Baker Castor Oil Co.*, 2 Ct. Cust. Appls. 338, T. D. 32076. Appellant's attempted distinction, therefore, is without merit. We are convinced that the clear language of section 507 warrants our adoption of the Customs Court's interpretation of said section in *Frame & Co.* v. *United States*, 46 Treas. Dec. 355, T. D. 40476:

\* \* \* We construe the words, "In no case shall there be any allowance for draft or for impurities, other than excessive moisture," to be cognate with and a part of the tare referred to in the first part of the paragraph, which the Secretary of the Treasury is authorized to prescribe regulations for ascertaining.

Appellant next contends that the words "but in no case shall there be any allowance for draft or for impurities, other than excessive moisture and impurities not usually found in or upon such or similar merchandise" in section 507 carry with them the implication of an

affirmative direction that allowance shall be made for excessive moisture and impurities beyond the amount usually found in or upon such or similar merchandise; that the Secretary of the Treasury has, by requiring the filing of Form 4317 within ten days after the return of weight has been received by the collector

\* \* \* taken it upon the executive branch of the Government to legislate a ten day statute of limitations on allowance for excess moisture and impurities, where Congress has imposed no such time limitation.

Appellant concludes, on the basis of the foregoing, that the ten day time limit is repugnant to the "implied affirmative direction" of Congress and is therefore void.

That the provision in the latter portion of section 507 indicates a congressional direction for allowance for excessive moisture and impurities cannot be denied. This positive direction, however, is not unqualified, for it is tempered by the equally positive direction authorizing the Secretary of the Treasury to prescribe and issue regulations concerning same. As aforesaid, these regulations, having been promulgated under a specific provision of a tariff act, are mandatory and compliance therewith is a condition precedent to the right accorded by the statute.

We are not unmindful of the general rule, as propounded by the Supreme Court, that the Secretary of the Treasury cannot by his regulations alter or amend a revenue law. *Morrill* v. *Jones*, 106 U. S. 466 (1882). In the *Morrill* case section 2505 of the Revised Statutes, which provided that

Animals, alive, specially imported for breeding purposes from beyond the seas, shall be admitted free [of duty], upon proof thereof satisfactory to the Secretary of the Treasury, and under such regulations as he may prescribe.

was involved. The Supreme Court held that a customs regulation, promulgated by the Secretary of the Treasury, which attempted to limit the application of section 2505 to animals of superior stock was invalid as an unwarranted limitation of said section.

And in *United States* v. *R. H. Comey Brooklyn Co.*, 16 Ct. Cust. Appls. 248, T. D. 42843, the court held that a customs regulation setting a three-year time limit from the date of entry for consumption or withdrawal from warehouse on claims for drawback under section 313 of the Tariff Act of 1922 was invalid as being repugnant to said section despite the fact that section 313 contained a clause authorizing the Secretary of the Treasury to promulgate regulations governing drawback. The court pointed out that in section 313 a definite right was given to the importer of merchandise, which right the regulation, if enforced, would defeat. The court called attention to the fact that under the then existing law the merchandise might remain in the warehouse for not more than three years and that to require that such merchandise be manufactured, identified, and exported within three

years would, to that extent, defeat the purposes of the drawback provision. The court concluded that the fixing of a time limit for identifying and exporting merchandise which had been entered for consumption, for drawback purposes, was the prerogative of Congress and that the regulation was invalid since it denied a right to the importer which Congress had granted.

These cases, and many others too numerous to cite which follow a similar vein, however, are not controlling of the situation at bar. Clearly, they do not set forth the proposition that regardless of specific authorization to the Secretary of the Treasury to promulgate regulations governing the rights accorded by a tariff provision, the Secretary may not establish conditions precedent to the assertion of said rights. To so construe the holdings of these cases would require us to overturn the long line of customs cases which have held that certain customs regulations are mandatory and conditions precedent to recovery notwithstanding the fact that the specific wording of the regulations propounded were not *in haec verba* authorized by Congress.

A careful examination of these cases indicates only that the courts will strike down a regulation when that regulation or any portion thereof is *repugnant* to a right accorded by Congress, or clearly in excess of statutory authority.

That a so-called "statute of limitations" may be valid is shown by *United States* v. *Gruen Watch Co.*, 21 C. C. P. A. (Customs) 225, T. D. 46761, wherein this court held that a customs regulation setting forth a two year time limit from the date of clearance of the exporting vessel or conveyance on claims for drawback under section 313 of the Tariff Act of 1922 was valid. We there distinguished the *R. H. Comey Brooklyn Co.* case, *supra*, as follows:

* * * The *Comey* case involved a regulation which required the manufacture, identification and exportation of goods within a given time. If the merchandise remained in bonded warehouse, it was clear that the time was not sufficient, and the regulation as to goods of this character was clearly unreasonable and invalid. In the *Comey* case, the court said that there was no manufacturing and exporting of merchandise involved in the regulation in the *MacNichol* case. That is true in the instant case. The regulation here does not involve a requirement that the goods must be manufactured from imported goods and *exported* within a given time. * * * (Italics quoted.)

We further stated therein:

In the case at bar, the right of the importer to export its goods and have them identified and thus establish the basis of its claim for drawback is in nowise affected by the two-year provision under discussion. The regulation provides that after all said steps have been taken, the importer must, within two years from the date of the clearance of the exporting vessel, file the entry, together with certain papers, all of which affords information requisite for the proper liquidating of the entry. It seems to us that the filing of the entry and papers such as is required by the regulation is similar in some respects to presenting the details of a bill for payment. That the two-year period is a reasonable length of time in which to file such entry is not questioned.

See also *MacNichol Packing Co. et al.* v. *United States*, 14 Ct. Cust. Appls. 400, T. D. 42050.

We are of the opinion that the setting forth of a time limitation in section 15.7 in the instant case is not such an encroachment on the legislative powers of Congress by the Secretary of the Treasury as was involved in the *Comey* or *Morrill* cases, *supra*, but rather, an administrative regulation wholly within the bounds of the authority granted the Secretary by Congress.

Appellant argues that to assess a duty on the bottom sediment and water contained in the instant importation would be, in effect, to impose a duty upon a non-importation; that "It is axiomatic that customs duties are primarily to be levied upon imported merchandise of value which is to enter into the commerce of the United States in competition with domestically produced goods and which is deemed a proper source of revenue."; that in accordance with the foregoing axiom Congress has provided in section 315 of the Tariff Act of 1930 that duties shall "be levied and collected upon the quantity of such merchandise at the time of its importation"; and that section 315 applies to the instant case "quite independently of the provisions of section 507, except that Congress has also provided by the latter section that allowance shall be made for the amount of moisture and impurities * * * that is excessive * * *."

To grant appellant's assertion as to the role section 315 plays in the Tariff Act would be incompatible with the view we have taken as to the significance of section 507. It would be as logical to conclude that section 315 renders null and void the language of section 507 to the effect that "in no case shall there be any allowance for draft or for impurities not usually found in or upon such or similar merchandise," for this language clearly imposes a duty upon a non-importation, i. e., moisture and impurities usually found in or upon such or similar merchandise. Obviously, section 315 must be read in the light of section 507.

The many cases cited by appellant in support of its contention that no duty is to be assessed on a non-importation are not here in point. In *Marriott* v. *Brune et al.*, 50 U. S. 619 (1850), *Lawder* v. *Stone*, 187 U. S. 281 (1902), *Lippincott Co.* v. *United States*, 11 Ct. Cust. Appls. 29, T. D. 38646, etc., customs regulations such as are here involved were not before the courts. In the *Lawder* case, at page 293, the Supreme Court expressly recognized that Congress could, by the use of proper language, impose a duty on what would be commonly called a non-importation.

In the instant case, Congress, in section 507, has in effect recognized that certain portions of importations are apt to be worthless and that, therefore, no duty should be imposed upon said portions. The right to bring such portions duty-free within the bounds of the United States is a qualified privilege, however, subject to, among

other things, proper regulations promulgated by the Secretary of the Treasury.

*United States* v. *Browne Vintners Co., Inc.,* 34 C. C. P. A. (Customs) 112, C. A. D. 351, and *United States* v. *Washington State Liquor Control Board,* 34 C. C. P. A. (Customs) 118, C. A. D. 352, cited by appellant as authority for the proposition that despite noncompliance with a customs regulation, an importer will be allowed to prove the fact of non-importation of merchandise in court, are not here in point. In each of those cases regulations promulgated under a *general,* as opposed to a *specific,* provision of the Tariff Act were involved. It is well recognized that only those regulations in the latter category are mandatory and conditions precedent to the right accorded by the statute. *Browne Vintners Co., Inc.,* case, *supra.* For this reason alone was the importer in those cases allowed to prove the fact of non-importation in court.

Appellant concludes its multi-pronged argument by asserting that section 15.7 (*a*), *supra,* is unreasonable in that it requires the filing of an application for an allowance within ten days after the return of weight has been received by the collector; that the return of weight has no relation to the presence in the importation of petroleum of an excess amount of bottom sediment and water; that it was not evident until the receipt by the collector of the report from the customs laboratory at least five days after his receipt of the return of weight (and, therefore, five days after the ten day time limit had commenced to run) that the petroleum contained 1.6% bottom sediment and water; and that, therefore, the ten day time limit is arbitrary and unreasonable.

We are of the opinion that this argument is without merit. Unfortunately, the question is clouded by the fact that an investigation to determine the amount of bottom sediment and water was made by the customs laboratory and submitted to the collector. What prompted this investigation is not shown by the record. It is to be noted that neither section 507 nor section 15.7 requires the collector to make or cause to be made an investigation to determine the quantity of excessive moisture and/or other impurities in the importation. When section 15.7 is read as an entity, it is evident that the collector is required to cause such investigation to be made only after an application for allowance has been made by the importer as provided in section 15.7 (*a*). Section 15.7 apparently leaves to the importer the task of determining whether or not the importation is of such a nature as to warrant the filing of an application for allowance. Whether or not such procedure is unreasonable has not been argued by appellant; we have no recourse, therefore, but to conclude that it is not unreasonable. Thus, the fact that the report of the customs laboratory showing the quantity of bottom sediment and water in the importation of crude petroleum was received by the collector at least 5 days after his

receipt of the return of weight can have no bearing on the instant question.

Assuming arguendo that the return of weight (the receipt of which by the collector causes the ten day period to run) has no relation to the presence of excessive moisture or other impurities and that therefore the selection of this event to start the ten day period running is "arbitrary," we are nevertheless of the opinion that section 15.7 (a) is not unreasonable. Any point from which the ten day period was set to run could be said to be "arbitrary" excepting, of course, a period set to run from the receipt by the collector of the laboratory report showing the presence of excessive moisture or impurities.

The ultimate question to be answered, of course, is not whether the point from which the period runs is "arbitrary" but whether it is *unreasonable* to so set the period or whether the extent of the period is itself unreasonable.

Appellant's arguments were answered by the Customs Court as follows:

* * * Sections 27.39 and 27.40 of the Customs Manual of 1943, in effect at the time of this importation, provided that weighing, gauging, or measuring officers shall make correct entries in dock books of goods weighed, gauged, or measured; that reports shall be prepared from said dock books; that such reports shall be filed in the collector's office 3 days after the work has been completed; and that certificates or copies shall be furnished to parties in interest at their expense. Under these circumstances, it appears that the importer could have obtained the needed information in time to file an application for an allowance had due diligence been exercised.

Appellant claims that the return of weight was not prepared until 39 days after entry of the imported merchandise into the United States and not received by the collector until 40 days thereafter; that the gauging of the merchandise "must have been completed" on the date of entry; and that therefore said return of weight was not filed with the collector "3 days after the work had been completed."

Appellant concludes that

The ten day statute of limitations may be reasonable when the reports are available in 3 days, but it certainly is not reasonable when they are not available for 40 days thereafter.

We are of the opinion that appellant's contentions militate against its claim rather than aid it. We are not convinced that the gauging "must have been completed" on the date of entry. No facts on record support such a conclusion. It would be more logical to conclude, in the absence of proof to the contrary, that the customs officers abided by the regulations then in force and did file their report with the collector within 3 days after completion of their work. The fact that these officers are given some leeway to *complete* their work does not work to the detriment of appellants. If anything might be said of the situation at bar it is that appellant was given *more* time than

92

section 15.7 (a) affords it (40 days more time) in which to file its application for allowance.  Once the return of weight is recorded in the dock books, which books are public records and freely available to appellant, it is a matter of ease for appellant to take the necessary steps to obtain an allowance for excessive moisture and other impurities.

We agree with the court below that if appellant had exercised due diligence, it would have had more than ample time under the existing laws in which to assert its right.

For the foregoing reasons, the decision of the Customs Court is *affirmed*.

JACKSON, J., Retired, recalled to participate herein in place of COLE, J., absent because of illness.